UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLARENCE BROWN,

                                    Plaintiff,

                                                              5:23-cv-00002-MAD-TWD

v.

JON E. BUDELMANN et al.,
                                    Defendants.
_____

APPEARANCES:

CLARENCE BROWN
  *Plaintiff, pro se*
31 Pearl Street
Apartment 106
Lyons, NY 14489

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>ORDER AND REPORT-RECOMMENDATION</u>

The Clerk has sent the Court a civil rights complaint filed by Clarence Brown

("Plaintiff") pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)  Plaintiff has also filed a motion to

proceed *in forma pauperis* ("IFP").  (Dkt. No. 3.)  For the following reasons, the Court grants

Plaintiff's IFP application for purposes of initial review and recommends dismissal of the

complaint in its entirety and without leave to amend.

**I.      IFP APPLICATION**

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  (Dkt.

No. 3.)  After reviewing Plaintiff's application, this Court finds he is financially eligible for IFP

status.  Therefore, Plaintiff's IFP application is granted for purposes of initial review.

## II.    BACKGROUND

Plaintiff initiated this action against Jon E. Budelmann, Jodi A. Danzig, and Christopher Valdina on January 4, 2023.  (Dkt. No. 1.)  Plaintiff lists the official positions for the Defendants as follows: Jon E. Budelmann as "Chief Assistant"; Jodi A. Danzig as "Attorney General"; and Christopher Valdina as "Assistant."  (Dkt. No. 1 at 1-2.)

The Court takes judicial notice that Jon E. Budelmann was an Assistant District Attorney for Cayuga County from 1995 to 2007 and the District Attorney of Cayuga County from 2008 to 2021.[1]  He is currently a Cayuga County Surrogate Judge.  *Id.*  Jodi A. Danzig is an Assistant Attorney General at the New York Attorney General's Office.[2]  Christopher Valdina is the Chief Assistant District Attorney for Cayuga County.[3]

Plaintiff was arrested in 2006 for burglary.  (Dkt. No. 1 at 2.)  At his trial, Plaintiff alleges evidence presented against him was "false" and "[p]hone logs were blacked out."  *Id.* Plaintiff further claims the government presented his immigration status incorrectly.  *Id.* Allegedly, the government stated at the trial Plaintiff had previously been deported and had re-entered the United States illegally.  *Id.*  Plaintiff disputes this assertion and claims Homeland Security does not have any record of his alleged illegal re-entry.  *Id.*  On May 12, 2008, Plaintiff was found guilty of two counts of Burglary in the Second Degree and one count of Promoting Prostitution in the Fourth Degree.  (Dkt. No. 1 at 9.)

---

[1] Linkedin, Jon Budelmann, https://www.linkedin.com/in/jon-budelmann-30135a8 (last visited Apr. 14, 2023.)
[2] OPENGOVNY, Jodi Ann Danzig, https://opengovny.com/attorney/2543387 (last visited Apr. 14, 2023); OpenPayrolls, Jodi A Danzig, https://openpayrolls.com/employee/jodi-a-danzig-9593 (last visited Apr. 14, 2023.)
[3] Cayuga County New York, Staff Directory, https://www.cayugacounty.us/directory.aspx?eid=39 (last visited Apr. 14, 2023.)

Additionally, during his trial, Defendants allegedly claimed Plaintiff's establishment, Brown's Bahamian Bar & Rest, did not have the requisite liquor license, making Plaintiff's transactions there illegal.  (Dkt. No. 1 at 2, 16.)

Plaintiff lists his first cause of action as "I want my name cleared"; his second cause of action as "I need proof from the [District Attorney's] office of deportation including date and the time along with documentation of where I re-entered illegally"; and his third cause of action as "I believe the [District Attorney] tampered with evidence."  (Dkt. No. 1 at 3.)  He does not request any specific form of relief from the Court in the prayer for relief section of his complaint.  (Dkt. No. 1 at 4.)

## III.    SUFFICIENCY OF THE COMPLAINT

### A.    Legal Standard

Under Section 1915(e), the Court must dismiss a complaint filed IFP if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).[4] The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).  While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest claims that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).

---

[4]  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

**B.** *Heck v. Humphrey* **Bars Plaintiff's Section 1983 Claims**

When a claim under Section 1983 calls into question the validity of an underlying

conviction, a district court must dismiss the claim, unless the conviction has been

invalidated. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Wilkinson v. Dotson*, 544 U.S. 74,

81-82 (2005) (*Heck*'s bar applies regardless of whether a plaintiff seeks damages or injunctive

relief). The petitioner in *Heck* was an inmate with a direct appeal from his conviction pending,

who brought a Section 1983 action for damages against state officials who, he claimed, acted

unconstitutionally in arresting and prosecuting him. Drawing an analogy to the tort of malicious

prosecution, the Supreme Court held that an inmate's Section 1983 claim for damages was

unavailable because he could not demonstrate that the underlying criminal proceedings had

terminated in his favor. *Heck*, 512 U.S. at 486-87. In *Heck*, the Supreme Court enumerated four

methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed

on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition

was issued by a federal court; or (4) an authorized state tribunal declared the conviction

invalid. *Id.*

Here, all of Plaintiff's Section 1983 claims arise from Plaintiff's May 2008 prosecution

and conviction in Cayuga County. (Dkt. No. 1 at 2, 9.) As is readily apparent, affording the *pro

se* complaint a liberal construction, there is no allegation that Plaintiff's conviction has been

invalidated. Indeed, Plaintiff asserts Defendants tampered with evidence, presented false

evidence at trial, and requests his "name" to be "cleared." (Dkt. No. 1 at 2.) Because Plaintiff's

success on his civil rights claims in this action would necessarily invalidate the conviction,

which is not alleged to have been reversed or vacated, Plaintiff's Section 1983 claims are not

cognizable under *Heck*.  Thus, *Heck's* bar precludes their adjudication.[5]  *See, e.g.*, *Curtis v. Rockland Cty.*, No. 21-CV-04294, 2022 WL 16540705, at \*5 (S.D.N.Y. Oct. 28, 2022) ("A judgment in Plaintiff's favor on the unlawful search and seizure claim would clearly imply the invalidity of his conviction, and the claim is therefore barred by *Heck v. Humphrey*.").

Moreover, the Second Circuit has made clear that, "when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom." *Stegemann v. Rensselaer County Sheriff's Off.*, No. 20-CV-3316, 2021 WL 5492966, at \*2 (2d Cir. Nov. 23, 2021) (citing *Heck*, 512 U.S. at 487 n.7).  Given that Plaintiff has not alleged any injury other than those related to his conviction, which he asserts resulted from the May 2008 trial, he cannot recover any damages or seek injunctive relief for these injuries unless and until his conviction is overturned.  *See, e.g.*, *Curtis v. Rockland Cty.*, 2022 WL 16540705, at \*5.  Accordingly, at this juncture, Plaintiff's Section 1983 claims are not plausible, and the Court recommends dismissal of the complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).  *See Arrington v. LoTempio*, No. 22-CV-6141, 2023 WL 375098 at \*3-4 (W.D.N.Y. Jan. 24, 2023) (*sua sponte* dismissing plaintiff's illegal search and denial-of-fair-trial claims without prejudice pursuant to *Heck*, including related conspiracy claims, brought pursuant to Section 1983 and *Bivens*).

---

[5] "Although '[Section] 1983 remains a possible remedy when there is no other federal avenue through which to bring a claim,' *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013), Plaintiff has the opportunity to seek habeas relief once his constitutional claims are properly exhausted in state court."  *Braithwaite v. Collins*, No. 22-CV-0016, 2023 WL 2350030, at \*7 (E.D.N.Y. Mar. 3, 2023).

### C.    Prosecutorial Immunity

Although *Heck* bars Plaintiff's claims seeking to impose Section 1983 liability on Defendants, such claims are not plausible for the additional reason that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987).

As noted, Defendants were all prosecutors at the time of Plaintiff's trial. Prosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it") (internal quotation marks and citation omitted). In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273. This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of

evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *5

(S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626, 2000 WL

1335865, at *2 (S.D.N.Y. Sept. 15, 2000)).  Immunity even extends to "the falsification of

evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981)

(citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured

testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431

n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*,

500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory v.

Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also see also Verbeek v. Teller*, 158 F. Supp. 2d 267,

282 (E.D.N.Y. 2001) (granting motion to dismiss claims against prosecutorial official because

conspiracy allegation does not "negate her entitlement to absolute immunity") (citing *Dory*, 25

F.3d at 83).  Therefore, the Court recommends that Plaintiff's Section 1983 claims against

Defendants be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii),

1915A(b)(2).

     **WHEREFORE**, for these reasons, it is hereby

     **ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED** for purposes of

filing and any appeal, unless the trial court certifies in writing that the appeal is not taken in good

faith, and it is further

     **RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS

ENTIRETY WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii),

1915A(b)(1); and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated: April 17, 2023
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2022 WL 16540705
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Cyril CURTIS, Plaintiff,

v.

ROCKLAND COUNTY, Officer Phillip Fantasia,
Officer John Casey, Officer Raymond Lund, Officer
Michael Vigiletti, Investigator Joe Alvarez, Defendants.

21-CV-04294 (PMH)
|
Signed October 28, 2022

**Attorneys and Law Firms**

Cyril Curtis, Marcy, NY, Pro Se.

Michael A. Miranda, Richard Brian Epstein, Miranda Slone Sklarin Verveniotis, LLP, Mineola, NY, for Defendant Officer Phillip Fantasia.

Larraine Susan Feiden, County of Rockland, New City, NY, Patrick John Fischer, Office of the County Attorney New City, NY, for Defendants Officer John Casey, Rockland County.

Kenneth Ethan Pitcoff, Frank Humphrey Foster, Morris Duffy Alonso & Faley, New York, NY, Marissa Padovano, New York City Law Department, New York, NY, for Defendants Officer Raymond Lund, Officer Michael Vigiletti, Investigator Joe Alvarez.

**MEMORANDUM OPINION AND ORDER**

PHILIP M. HALPERN, United States District Judge:

**\*1** Cyril Curtis ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 against Rockland County, Investigator Joe Alvarez ("Alvarez"), Officer John Casey ("Casey"), Officer Phillip Fantasia ("Fantasia"), Officer Raymond Lund ("Lund"), and Officer Michael Vigiletti ("Vigiletti" and collectively, "Defendants"). Plaintiff alleges that Defendants violated his constitutional rights during the July 3, 2018 search of his home, his six-hour pretrial detention on the same date, and his subsequent imprisonment. (Doc. 9, "FAC").

For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

**BACKGROUND**

**A. Procedural Background**

Plaintiff filed this action on May 10, 2021. (Doc. 2). The original Complaint named Rockland County Drug Task Force, Rockland County Office of the Sheriff Department, Sheriff Louis Falco III, Officer Phillip Fantasia, Officer John Casey, John Doe 1, John Doe 2, John Doe 3, and John Doe 4 as Defendants. (*Id.*). On June 14, 2021, the Court issued a *Valentin* Order which dismissed Plaintiff's claims against Rockland County Drug Task Force and Rockland County Office of the Sheriff Department and added Rockland County as a Defendant. (Doc. 6). [1] The Court further ordered the Rockland County Law Department to identify the John Doe defendants. (*Id.* at 3). On July 9, 2021, Plaintiff filed his First Amended Complaint ("FAC"), which dropped Sheriff Louis Falco III as a Defendant. [2] (Doc. 9). On August 12, 2021, Rockland County filed a letter in response to the Court's June 14, 2021 *Valentin* Order identifying John Doe 1 as Officer Raymond Lund, John Doe 2 as Officer John Casey, John Doe 3 as Officer Michael Vigiletti, and Investigator Joe Alvarez. (Doc. 13). On August 13, 2021, the Court ordered the substitution of the individuals identified in Rockland County's August 12, 2021 letter and terminated Sheriff Louis Falco III as a defendant. (Doc. 14).

[1]  Rockland County Drug Task Force and Rockland County Office of the Sherriff Department were dismissed as Defendants because neither entity qualified as a "person" within the meaning of 42 U.S.C. 1983. (Doc. 6 at 2).

[2]  Plaintiff's First Amended Complaint was timely filed within 21 days of service of the original Complaint pursuant to Fed. R. Civ. P. 15(a).

On August 31, 2021, Plaintiff filed an unauthorized Second Amended Complaint ("SAC"). (Doc. 18). [3] The caption of the SAC referred to four "John Doe" defendants that had already been identified by Rockland County and substituted by the Court's August 13, 2021 Order. (*See* Doc. 14). Accordingly, on September 16, 2021, the Court issued an Order once again terminating the John Doe defendants as parties and restoring Officer Lund, Officer Vigiletti, and Investigator Alvarez as parties. (Doc. 29). Accordingly, Plaintiff's claims in the FAC, as modified by the Court's

3       Plaintiff did not file a motion for leave to amend the FAC pursuant to Fed. R. Civ. P. 15(a)(2). The Court therefore strikes Plaintiff's SAC as untimely and unauthorized and construes the FAC as the operative pleading for the purposes of Defendants' motions to dismiss. *See Ko v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 64 (2d Cir. 2018) (affirming the striking of an unauthorized amended complaint where plaintiff did not seek leave to amend).

**\*2** The Court granted Defendants leave to file motions to dismiss during the pre-motion conference on March 1, 2022, and ordered that Defendants file joint moving and reply briefs in support of their motions. (Doc. 50). On March 29, 2022, Defendants filed their motions to dismiss and joint moving brief. (Doc. 51; Doc. 52; Doc. 53; Doc. 54 ("Defs.' Br."); Doc. 55). Plaintiff filed his opposition brief on May 3, 2022. (Doc. 56, "Opp. Br."). Defendants filed their joint reply brief on May 16, 2022. (Doc. 59, "Reply Br.").

**B. Factual Background**

Plaintiff alleges that, on July 3, 2018, he was pulled over by Fantasia, Casey, and Lund. (FAC ¶¶ 1-3). Fantasia, Casey, and Lund, during the stop, informed Plaintiff that they had a search warrant for his person, vehicle, and home and provided Plaintiff with a copy of the warrant to search for drugs and drug paraphernalia. (*Id.* ¶¶ 3-5). Plaintiff was handcuffed after Defendants searched his vehicle and was transported to the police station in Haverstraw, New York. (*Id.* ¶ 8). Upon arrival at the police station in Haverstraw, Alvarez and Vigiletti placed Plaintiff in a holding cell "for 6 hours with no phone calls and nothing to eat or drink." (*Id.* ¶ 9).

Plaintiff alleges that, while he was held at the Haverstraw police station, Fantasia, Casey, and Lund provided his wife with a copy of the search warrant and searched Plaintiff's home, but did not find any drugs or drug paraphernalia. (*Id.* ¶¶ 10-13). During the search of Plaintiff's home, Fantasia, Casey, and Lund located and broke open a locked safe which contained an "unloaded 9MM [Smith & Wesson] handgun" and also found "the bullets for [that] handgun inside a case" under Plaintiff's bed. (*Id.* ¶¶ 14-15). After finding the handgun and ammunition, Fantasia and Casey left Plaintiff's home while Lund stayed behind. (*Id.* ¶ 15). Fantasia and Casey returned five hours later with a new warrant, which allowed

for search and seizure of "[f]irearms, handguns, including 9mm handgun, bullets, ammunition, magazine, weapons, and marihuana." (*Id.* ¶ 19, Ex. B). Casey and Fantasia provided Plaintiff's wife with a copy of the second warrant. (*Id.* ¶ 19). Plaintiff alleges that Defendants Casey and Fantasia "forged a Judge['s] signature" or otherwise "[a]lter[ed] and tamper[ed]" with the second warrant. (*Id.* ¶ 22).

Following the search of his home, Plaintiff was charged, and subsequently convicted for violation of New York Penal Code § 265.03, Criminal Possession of a Weapon in the Second Degree.[4] Plaintiff is currently serving out his sentence at Marcy Correctional Facility. (FAC at 2).

4       *See* New York Dep't of Corr. and Cmty. Supervision ("DOCCS") Incarcerated Lookup, available at https://nysdoccslookup.doccs.ny.gov/ (information obtained for DIN# 19-A-0921). The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information. See *Williams v. Novoa*, No. 19-CV-11545, 2022 WL 161479, at \*1 (S.D.N.Y. Jan. 18, 2022) (taking judicial notice of plaintiff's DOCCS inmate lookup information); *Johnson v. City of New York*, No. 15-CV-8195, 2017 WL 2312924, at \*2 n.3 (S.D.N.Y. May 26, 2017) (collecting cases). The corresponding conviction and biographical information listed in DOCCS's public records match the information provided by Plaintiff his pleadings. (Doc. 9 at 2 (identifying Plaintiff's DOCCS Department ID Number as 19-A-0921), ¶ 21 (alleging that Plaintiff was charged with "[c]riminal [p]ossession of a weapon in the second degree").

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

Case 5:23-cv-00002-MAD-TWD   Document 6   Filed 04/17/23   Page 12 of 48

a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**\*3** "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The presumption of truth, however, " 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). The Court has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

"Even in a *pro se* case, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris*, 572 F.3d at 72 (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170.

## ANALYSIS

Plaintiff seeks relief under 42 U.S.C. § 1983. (FAC at 1). That statute provides, in pertinent part, that "[e]very person who, under color of any statute ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983. "[T]his language ... creates a mechanism by which individuals can vindicate the violation

of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at \*6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at \*3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). Reading the pleading broadly and interpreting the allegations to raise the strongest arguments they suggest, Plaintiff asserts claims for relief pursuant to 42 U.S.C. § 1983 for unlawful search and seizure, deliberate indifference to medial needs, and unlawful denial of a telephone call.

### I. Statute of Limitations

This action concerns Plaintiff's arrest and the execution of search warrants at his vehicle and home on July 3, 2018. The statute of limitations governing 42 U.S.C. § 1983 claims in New York is three years. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Plaintiff's complaint was not amended to name Defendants Lund, Vigiletti, and Alvarez until August 13, 2021, more than three years after the events giving rise to his claims.

An otherwise untimely amendment will survive if it is deemed to "relate back" to the original complaint. *See* Fed. R. Civ. P. 15(c)(1); *see also Sutton v. Rodriguez*, No. 18-CV-01042, 2021 WL 2894834, at \*3 (S.D.N.Y. July 9, 2021). The federal standard for relation back when an amendment to the pleadings adds a party to an action, set forth in Rule 15, provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment changes the party or the naming of the party against whom a claim is asserted...." Fed. R. Civ. P. 15(c)(1)(C). A lack of knowledge about a defendant's identity, however, cannot be characterized as a "mistake of identity" for purposes of Rule 15(c)(1)(C). *Hogan v. Fischer*, 738 F.3d 509, 517-18 (2d Cir. 2013); *see also Cotto v. City of New York*, 803 F. Appx. 500, 503 (2d Cir. 2020). As a result, Rule 15(c)(1)(C) "preclude[s] relation back" in cases like this one, where a plaintiff names John Doe defendants because he does not know the identity of the defendants until the statute of limitations has run. *Id.* (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)).

**\*4** An amendment may also relate back, however, when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). A plaintiff bringing a § 1983 claim can therefore rely on New York's relation back rules to substitute a named defendant for a John Doe defendant. *See Hogan*, 738 F.3d at 518–19; N.Y. CPLR § 1024. For the amendment to relate back under New York law, a plaintiff must satisfy two requirements. *Hogan*, 738

F.3d at 519. First, the plaintiff must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name" and second, "the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Id.* (citation omitted).

Here, Plaintiff cannot satisfy the first requirement. Despite the events giving rise to Plaintiff's claims occurring in 2018, " 'Plaintiff appears to have expended no efforts at all to identify the Individual Defendants in the three years that followed,' waiting until the statute of limitations had nearly run to file his complaint." *JCG v. Ercole*, No. 11-CV-06844, 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) (quoting *Williams v. United States*, No. 07-CV-03018, 2010 WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010)), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014). In that time, he could have served discovery demands upon the known parties, sought disclosures pursuant to a Freedom of Information Law ("FOIL") request, or written letters to the Attorney General's Office. *Cf. Hogan*, 738 F.3d at 519 (plaintiff met first requirement under § 1024 in that he "diligently sought to identify the "John Doe defendants" by submitting "multiple discovery requests to the Attorney General's office"); *Mabry v. New York City Dept. of Corrections*, No. 05-CV-08133, 2008 WL 619003, at *6 (S.D.N.Y. March 7, 2008) (allowing relation-back where plaintiff's first complaint was well within statute of limitations and she "aggressively sought the identities of the defendants"). Filing suit weeks before the statute of limitations expires, without more, is insufficient to show due diligence under § 1024. *See, e.g., Vasconcellos v. City of New York*, No. 12-CV-08445, 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014) (declining to apply § 1024 because "Vasconcellos did nothing to exercise due diligence prior to the running of the statute-or, for that matter, after it ran"); *Jones v. City of New York*, 571 F. Supp. 3d 118, 131 (S.D.N.Y. 2021) (holding that an incarcerated *pro se* Plaintiff did not exercise due diligence where he failed to take any actions "to uncover the John and Jane Doe defendants' identities prior to the expiration of the limitations period"); *Liverpool v. Davis*, 442 F. Supp. 3d 714, 727 (S.D.N.Y. 2020) (same).

In light of Plaintiff's failure to exhibit diligence in attempting to ascertain the identity of the John Doe defendants, the claims against Defendants Lund, Vigiletti, and Alvarez do not relate back to the original Complaint and are, therefore, barred by the statute of limitations. Accordingly, Defendants Lund, Vigiletti, and Alvarez are dismissed from this action.

## II. Unlawful Search and Seizure Claim

Plaintiff alleges that the July 3, 2018 search of his home and subsequent seizure of a firearm was conducted pursuant to an invalid warrant in violation of his Fourth Amendment rights. (FAC ¶¶ 13-16). The Supreme Court's decision in *Heck* "precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions." *Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). Under *Heck*, if a judgment in a plaintiff's favor would "necessarily imply the invalidity of his conviction or sentence," the complaint must be dismissed. 512 U.S. at 487. The bar established in *Heck* applies regardless of whether a plaintiff seeks damages or injunctive relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

**\*5** Plaintiff's claim relates to the search and seizure of the weapon that is the subject of his conviction and sentence. (FAC ¶ 21). To prevail on his search and seizure claim, Plaintiff would have to establish that the firearm should not have been seized and his subsequent conviction was therefore invalid. A judgment in Plaintiff's favor on the unlawful search and seizure claim would clearly imply the invalidity of his conviction, and the claim is therefore barred by *Heck v. Humphrey*.

Plaintiff's claim also fails under a separate ground articulated in *Heck*. "[W]hen seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom." *Stegemann v. Rensselaer Cnty. Sheriff's Off.*, No. 20-3316-CV, 2021 WL 5492966, at *2 (2d Cir. Nov. 23, 2021) (citing *Heck*, 512 U.S. at 487 n.7). Here, Plaintiff has not alleged any injury other than those related to his conviction and subsequent imprisonment, which he asserts resulted from the purportedly invalid warrant. (FAC at 14). All the damages sought by Plaintiff are directly related to the alleged harm caused by his conviction and resulting imprisonment. (*Id.* at 14). For example, Plaintiff seeks damages for the "los[s] of [his] pension and 401(k) plan," for "the suffering and pain [caused by] being incarcerated for 3 years," for "future pain and suffering" caused by not being able to find a job due to his incarceration, for "mental anguish and mental pain over the years being incarcerated," and finally for "unlawful imprisonment." (*Id.*). Each of these injuries for which Plaintiff seeks damages are a direct result of his conviction and imprisonment. Thus, even if Plaintiff's unlawful search and seizure claim does not call his conviction into question—which it necessarily does—Plaintiff cannot

recover any damages for these injuries unless and until his conviction is overturned.

Plaintiff's Fourth Amendment claim for unlawful search and seizure is, accordingly, dismissed.

### III. Deliberate Indifference to Medical Needs Claim

Plaintiff alleges that Defendants violated his Eighth Amendment rights by placing him in a holding cell for 6 hours without any food or water. (FAC ¶¶ 9, 18). As an initial matter, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation." *Adams v. Simone*, 759 F. App'x 82, 84 (2d Cir. 2019) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). Here, Plaintiff alleges that only Vigiletti and Alvarez were present during his pretrial detention. (FAC ¶¶ 8-9). Given that Plaintiff does not allege that Fantasia, Casey, and Lund were involved in Plaintiff's pretrial detention, or any of the alleged constitutional deprivations that occurred during that detention, Plaintiff's claims stemming from the six-hour pretrial detention are dismissed as to Fantasia, Casey, and Lund. [5]

[5]   Plaintiff also fails to allege that Defendants Vigiletti and Alvarez were personally involved in the search of Plaintiff's home and fails to allege that Defendant Lund was personally involved in Plaintiff's pretrial detention. Even if the claims against Defendants Vigiletti, Alvarez, and Lund were not dismissed on statute of limitations grounds, the Court would dismiss Plaintiff's unlawful search and seizure claim as to Defendants Vigiletti and Alvarez and the deliberate indifference claims as to Defendant Lund for failure to allege personal involvement.

**\*6** Although Plaintiff alleges that this deprivation violated his Eighth Amendment rights, a pretrial detainee's § 1983 claim of unconstitutional conditions of confinement is analyzed under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "To state a deliberate indifference claim under the Fourteenth Amendment, plaintiff's allegations must satisfy two prongs: an objective prong and a *mens rea* prong." *King v. Falco*, No. 16-CV-06315, 2018 WL 6510809, at \*7 (S.D.N.Y. Dec. 11, 2018). Under the first prong, the detainee's medical needs must be objectively "serious." *See Flemming v. Velardi*, No. 02-CV-04133, 2003 WL 21756108, at \*2

(S.D.N.Y. July 30, 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To determine whether a detainee's medical needs are sufficiently serious, courts consider "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 701-02 (2d Cir. 1998) (internal quotations omitted).

Under the second prong, "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). A plaintiff can demonstrate deliberate indifference by alleging facts that demonstrate that a defendant "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff's deliberate indifference claim fails at the first prong. The allegations in Plaintiff's pleading demonstrate that Plaintiff did not suffer a sufficiently serious injury to trigger constitutional protection. Although he alleges that he was placed in a holding cell for 6 hours without any food or water, Plaintiff makes no allegation that he had any need for food or drink and no allegation that the lack of those accommodations for several hours had any untoward consequences whatsoever. Even if Plaintiff had alleged as much, "there is 'a *de minimis* level of imposition with which the Constitution is not concerned.' " *Lynch v. City of New York*, 952 F.3d 67, 77 (2d Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.1 (1979)) (holding that a protestor who was detained for five hours and punitively denied food, drink, and access to a bathroom failed to state a Fourteenth Amendment claim); *see also Rivera v. Connolly*, No. 18-CV-03958, 2022 WL 1785313, at \*5 (S.D.N.Y. June 1, 2022) ("Nothing about Defendant's conduct, even in Plaintiff's version of the story, is 'repugnant to the conscience of mankind' or rises to the dignity of an Eighth Amendment violation."); *Simmons v. Kelly*, No. 06-CV-06183, 2009 WL 857410, at \*7 (S.D.N.Y. Mar. 31, 2009) ("Courts in this jurisdiction have held that a deprivation of food and water during detention that only lasted a few hours did not rise to the level of a constitutional violation."); *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 269 (N.D.N.Y. 2008) (holding that lack of food and water overnight was not a constitutional violation); *Webster v. City of New York*, 333 F. Supp. 2d 184, 200 (S.D.N.Y. 2004) (holding that failure to provide a detainee

with food and water "for the few hours" that they were held is "insufficient as a matter of law" to support a deliberate indifference claim). Plaintiff's allegation that he did not receive food and water during his 6-hour detention, without more, does not rise to the level of a constitutional violation and, as such, his deliberate indifference claim is dismissed.

## IV. Unlawful Denial of a Telephone Call

Plaintiff alleges that Defendants violated his constitutional rights by depriving him access to a telephone call during his 6-hour detention. (FAC ¶ 18). However, Plaintiff does not have a constitutional right to a phone call. *Hodge v. Ruperto*, 739 F. Supp. 873, 876 (S.D.N.Y. 1990) (holding that there is "no constitutional requirement that a detainee be permitted a telephone call upon completion of booking formalities"); *see also Marcus v. Bush*, No. 11-CV-04049, 2013 WL 2154786, at *4 (E.D.N.Y. May 17, 2013) (holding that denying a detainee "permission to call his counsel ... for a one hour period" did not amount to a constitutional violation). Therefore, the alleged denial of a telephone call during Plaintiff's 6-hour detention cannot serve as the basis for a § 1983 claim. This claim for relief is, therefore, dismissed.

## V. *Monell* Claim

**\*7** By proceeding against Rockland County under 42 U.S.C. § 1983, the Court construes Plaintiff's Complaint to press a *Monell* claim. Such a claim requires that Plaintiff plead: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) (quoting *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012)). A *Monell* claim, however, "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cnty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)). Notwithstanding any other pleading deficiency in this case, this claim must be dismissed because Plaintiff has not pled an underlying constitutional violation. *See, e.g., Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Even if Plaintiff sufficiently pled a constitutional violation, his *Monell* claim would nevertheless fail "for lack of facts supporting the existence of a municipal policy or practice, because Plaintiff only alleges facts relating to his own claim." *Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *9 (S.D.N.Y. July 20, 2022); *see also Smith v. Westchester Cnty.*, No. 19-CV-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contain[ed] only a detailed account of plaintiffs' own experiences"). Plaintiff's *Monell* claim is, accordingly, dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. [6]

[6]     Given the conclusions reached herein, the Court need not and does not address Defendants' arguments regarding qualified immunity. (Defs.' Br. at 9).

While "[d]istrict courts should frequently provide leave to amend before dismissing a pro se complaint ... leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, the FAC is dismissed with prejudice because any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

## All Citations

Slip Copy, 2022 WL 16540705

---

Case 5:23-cv-00002-MAD-TWD    Document 6    Filed 04/17/23    Page 16 of 48

Stegemann v. Rensselaer County Sheriff's Office, Not Reported in Fed. Rptr. (2021)

2021 WL 5492966

2021 WL 5492966
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Joshua G. STEGEMANN, Plaintiff-
Cross-Defendant-Appellant,

v.

RENSSELAER COUNTY SHERIFF'S OFFICE,
Rensselaer County District Attorney's Office, Jack
Mahar, Air National Guard, Richard J. Sloma, Chris
Clifford, Warren County Sheriff's Office, Warren County,
Nathan H. York, Christopher Perilli, New York State
Police, New York State Police, Sort, Dan Kiley, Fulton
County Sheriff's Office, Fulton County, Berkshire
County Sheriff's Office, Berkshire County, Thomas
Bowler, Scott Colbert, Pittsfield Police Department,
Michael Wynn, Tyrone Price, John Mazzeo, Glenn
F. Decker, Glenn Civello, Massachusetts State Police
Department, David Brian Foley, Berkshire County
District Attorney's Office, David F. Capeless, Richard
Locke, Cellco Partnership, dba Verizon Wireless,
AT&T Mobility LLC, Rick Smith, Retired Captain
of the Massachusetts State Police, fka The Captain of
The Massachusetts State Police, Michael Fynn, Frank
Mastan, fka Unknown Members of the Rensselaer County
Emergency Response Team, Christopher Fumerola,
fka Unknown Members of the Rensselaer County
Emergency Response Team, Anthony D'Agostino,
fka Unknown Members of the Rensselaer County
Emergency Response Team, Justin Loomis, fka Unknown
Members of Fulton County Sheriffs Office Canine Team,
Wayne Peters, fka Unknown Members of Fulton County
Sheriffs Office Canine Team, Defendants-Appellees, [*]
Rensselaer County, Patrick Russo, fka Pat Russo,
Arthur Hyde, fka Art Hyde, Steve Wohlleber, William
Webster, Shane Holcomb, Jason Robelotto, fka J.S.
Robelotto, Mark Geracitano, Sandra Blodgett, Justin
Walread, Jami Panichi, Investigator, Travas McCarthy,
fka Travis McCarthy, William Scott, Dale Gero,
Michelle Mason, John Stec, Robert Patterson, fka
Todd Patterson, Steve Jones, Berkshire County Drug
Task Force, Derek Pyle, fka Captain Pyle, Richard
McNally, James Deas, William Roy, Investigator Film,
Unknown Members of the Rensselaer County Emergency

Response Team, Richard C. Giardino, Kevin Roy, as a
member of the Rensselaer County Emergency Response
Team, Unknown Members of Fulton County Sheriffs
Office Canine Team, Mark Gorman, fka Unknown
Members of the Rensselaer County Emergency Response
Team, Defendants-Cross-Defendants-Appellees,
Subsurface Informational Surveys, Inc.,
Defendant-Cross-Claimant-Appellee,
Michael Fynn, Defendant.

[*]    The Clerk of Court is directed to amend the caption
as set forth above.

20-3316-cv
|
November 23, 2021

Appeal from a judgment of the United States District Court
for the Northern District of New York (McAvoy, *J.*; Hummel,
*M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR    PLAINTIFF-CROSS-DEFENDANT-APPELLANT:
Joshua G. Stegemann, pro se, Ray Brook, NY.

FOR DEFENDANTS-APPELLEES: Stephen G. DeNigris,
The DeNigris Law Firm PLLC, Albany, NY; Joseph P.
Kittredge, Lorena Galvez, Rafanelli Kittredge, P.C., Acton,
MA (for William Scott, Dale Gero, Michelle Mason, John
Stec, Steve Jones, Robert Patterson, Travas McCarthy, and
James Deas); Seth Schofield, Senior Appellate Counsel,
for Maura Healy, Attorney General of the Commonwealth
of Massachusetts, Boston, MA (for Scott Colbert, Thomas
Bowler, Berkshire County Sheriff's Office, Berkshire County
District Attorney's Office, David Capeless, Richard Locke,
Berkshire County, Massachusetts State Police, Rick Smith,
and David Brian Foley); Shawn F. Brousseau, Napierski,
VanDenburgh, Napierski & O'Connor, LLP, Albany, NY
(for Pittsfield Police Department, Glenn Civello, Michael
Wynn, Tyrone Price, John Mazzeo, and Glenn F. Decker);
Andrew B. Joseph, Faegre Drinker Biddle & Reath LLP,
Florham Park, NJ (for AT&T Mobility LLC); Christine
D. Hanlon, The Law Office of Tromello & Fishman,
Chicago, IL (for Subsurface Informational Surveys, Inc.);
Janet D. Callahan, Hancock Estabrook LLP, Syracuse, NY

Case 5:23-cv-00002-MAD-TWD    Document 6    Filed 04/17/23    Page 17 of 48

Stegemann v. Rensselaer County Sheriff's Office, Not Reported in Fed. Rptr. (2021)

2021 WL 5492966

(for Cellco Partnership d/b/a Verizon Wireless); Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, Jonathan D. Hitsous, Assistant Solicitor General, for Letitia James, Attorney General of the State of New York, Albany, NY (for New York Air National Guard, Chris Clifford, Dan Kiley, New York State Police, New York State Port, and Richard Sloma); John W. Bailey, Crystal R. Peck, Baily, Johnson & Peck, P.C., Albany, NY (for Sandra Blodgett, Anthony D'Agostino, Christopher Fumerola, Mark Geracitano, Shane Holcomb, Arthur Hyde, Investigator Film, Mark Gorman, Jack Mahar, Frank Mastan, Richard McNally, Jami Panichi, Derek Pyle, Rensselaer County, Rensselaer County Sheriff's Office, Rensselaer County District Attorney's Office, Jason Robelotto, William Roy, Kevin Roy, Patrick Russo, Justin Walread, William Webster, and Steve Wohleber).

PRESENT: JOHN M. WALKER, JR., RICHARD C. WESLEY, JOSEPH F. BIANCO, Circuit Judges.

## SUMMARY ORDER

**\*1** Plaintiff-Cross-Defendant-Appellant Joshua Stegemann, proceeding *pro se*, brought various claims against several dozen defendants, including numerous law enforcement and government agencies, police officers, private entities (such as telecommunications companies), and others. He alleges, *inter alia*, that the defendants violated his Fourth, Fifth, and Fourteenth Amendment rights when a search warrant was executed at his home in April and May 2013. Specifically, Stegemann challenges the dismissal of his wiretap and excessive force claims, as well as his claims brought against defendant Subsurface Informational Surveys, Inc. ("Subsurface").

As relevant on appeal, the district court *sua sponte* dismissed Stegemann's claims concerning illegal wiretapping as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). After extensive motion practice, the district court also dismissed his Fourth Amendment excessive force and destruction of property claims against the law enforcement defendants as precluded by collateral estoppel. Subsequently, the district court granted summary judgment to defendant Subsurface—a private entity hired to conduct a survey on Stegemann's property in connection with the execution of the search warrant—on the destruction of property claims, reasoning that there was no evidence that Subsurface had caused any property destruction during the search. We assume the parties' familiarity with the underlying facts and the procedural history of the case,

which we reference only as necessary to explain our decision to affirm.

## I. Appellate Jurisdiction

As an initial matter, defendant-appellee AT&T Mobility LLC [1] contends that we lack appellate jurisdiction because three defendants (Berkshire County Drug Task Force, Kevin Roy, and Mark Gorman) and several "cross-defendants" were not dismissed on the district court docket. [2] We have jurisdiction over final decisions of the district court. 28 U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Roman Cath. Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 35 (2d Cir. 2014) (internal quotation marks and citation omitted). Although a separate judgment has not been entered and three defendants remain unserved, all other defendants have been dismissed. Therefore, we have jurisdiction to proceed to the merits of the appeal. *See Leonard v. United States*, 633 F.2d 599, 608–09 (2d Cir. 1980) (holding that "the absence of a dismissal" as to unserved defendants was "no impediment to the present appeal" of the dismissal of all of the other defendants).

[1] AT&T Mobility LLC contends that Stegemann improperly identified it as "AT&T Wireless Network" in his pleadings. The Clerk of Court is directed to amend the caption accordingly.

[2] The cross-defendants were the individual Rensselaer County law enforcement officers. The claims against those officers were dismissed. *Cf. Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 811 (2d Cir. 1979) (pre-trial settlement of original federal claim necessitated dismissal of cross-claim for indemnification).

## II. Illegal Wiretap Claims

**\*2** Stegemann first challenges the district court's dismissal of his illegal wiretap claims. We conduct *de novo* review of *sua sponte* dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii), accepting well-pled factual allegations in the complaint as true and drawing all reasonable inferences in Stegemann's favor. *See Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 125 (2d Cir. 2020). "Further, when the plaintiff proceeds *pro se*, as in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Case 5:23-cv-00002-MAD-TWD    Document 6    Filed 04/17/23    Page 18 of 48
Stegemann v. Rensselaer County Sheriff's Office, Not Reported in Fed. Rptr. (2021)

2021 WL 5492966

The Supreme Court's decision in *Heck v. Humphrey* "precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions." *Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014). Under *Heck*, if a judgment in the plaintiff's favor would "necessarily imply the invalidity of his conviction or sentence," the complaint must be dismissed. 512 U.S. at 487. The bar established in *Heck* applies regardless of whether a plaintiff seeks damages or injunctive relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

Stegemann contends that *Heck* cannot bar his wiretap claims because we concluded on the direct appeal of his criminal case that admission of the wiretap evidence at his trial was harmless error and that his conviction was affirmed based on the strength of the government's other evidence. *United States v. Stegemann*, 701 F. App'x 35, 38–39 (2d Cir. 2017) (summary order). In *Heck*, the Supreme Court noted that a Section 1983 suit "may lie" even if the challenged action "produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." 512 U.S. at 487 n.7. The *Heck* Court specifically pointed to the doctrine of harmless error as one reason such a claim could survive because it does not "*necessarily*" invalidate the conviction. *Id.* The governing standard for this exception is "whether a prisoner's victory in a § 1983 suit would *necessarily demonstrate* the invalidity of his conviction or sentence; that a prisoner's success might be merely helpful or *potentially* demonstrative of illegal confinement is, under this standard, irrelevant." *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007).

Stegemann is correct that, on his direct appeal of the criminal conviction, we did not address the merits of his contention that the wiretaps were illegal, but rather concluded that, even if the admission of any such evidence were error, it was harmless because the government's case was otherwise strong enough to sustain his criminal conviction. *Stegemann*, 701 F. App'x at 38–39. Thus, Stegemann's pursuit of claims in this civil action based on an alleged illegal wiretap, even if successful, would not invalidate his criminal conviction.

However, Stegemann's illegal wiretap claims are still barred on a separate ground under *Heck*. More specifically, as the Supreme Court explained in *Heck*, when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom. 512 U.S. at 487 n.7 ("In order to recover compensatory damages [for an illegal search claim] ... the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." (internal citation omitted)). Here, Stegemann has not alleged any injury other than his conviction and subsequent imprisonment, which he asserts resulted from the purportedly illegal wiretap. Therefore, even though his claims regarding the wiretap may not call his conviction into question, Stegemann cannot recover any damages for these injuries unless and until his conviction, which we affirmed on direct appeal, is overturned. Accordingly, there is no basis to disturb the dismissal of his illegal wiretap claims.

### III. Excessive Force Claim

**\*3** Stegemann also challenges the dismissal of his excessive force claim. First, Stegemann argues that the district court did not make a finding with respect to why his excessive force claim was barred by *Heck*. We disagree. The district court concluded that this claim was *not* barred by *Heck* because it did not necessarily imply the invalidity of his conviction. However, the district court treated Stegemann's excessive force claim arising from the execution of the search warrant as the same as his claims asserting property damage during the search. Ultimately, the district court dismissed the destruction of property claims as barred by collateral estoppel. On appeal, Stegemann contends that his excessive force claim concerned the entry of officers onto his property and was distinct from his destruction of property claims based on the actions of the officers during the search itself, and thus the district court erred by construing the claims as the same.

Even assuming, *arguendo*, that the district court should have construed his excessive force claim as separate from the destruction of property claims, we affirm the dismissal of both claims as precluded under the doctrine of collateral estoppel. We review *de novo* the dismissal of a complaint for failure to state a claim. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[Although] a court must accept as true all of the allegations contained in a complaint," this tenet is "inapplicable to legal conclusions" and "[t]hreadbare

2021 WL 5492966

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York collateral estoppel law to New York state court judgments. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005). Under New York law, the doctrine of collateral estoppel bars a party from relitigating an issue in a subsequent proceeding when "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Vargas v. City of New York*, 377 F.3d 200, 205–06 (2d Cir. 2004) (internal quotation marks omitted). Collateral estoppel applies only if the issue in the second action is identical to the first. *City of New York v. Welsbach Elec. Corp.*, 9 N.Y.3d 124, 128 (2007). A nonparty to the prior litigation may invoke the doctrine of collateral estoppel. *See Buechel v. Bain*, 97 N.Y.2d 295, 315–16 (2001).

Collateral estoppel applies here. First, the issues were identical. To determine if an issue is identical, New York courts apply a "functional approach[.]" *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 731 (2d Cir. 2001) (citing *Schwartz v. Pub. Adm'r. of Cnty. of Bronx*, 24 N.Y.2d 65, 73 (1969)). The test is whether the issue "has necessarily been decided in the prior action and is decisive of the present action[.]" *Schwartz*, 24 N.Y.2d at 71. It does not matter that the claim in the latter case is based on a different legal theory so long as the same underlying issue was litigated in the prior proceeding. *See Graven v. Children's Home R.T.F., Inc.*, 152 A.D.3d 1152, 1154 (N.Y. App. Div. 3d Dep't 2017).

Although Stegemann describes his claim here as an "excessive force" claim, the underlying issues are the same as the negligent destruction of property claim that he litigated previously in the New York Court of Claims. Both a Fourth Amendment claim and a state law negligent destruction of property claim involve questions of reasonableness. To determine whether a police officer's actions were reasonable under the Fourth Amendment, this court "ask[s] whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (internal quotation marks omitted). In New York, an officer must execute a search warrant "without unnecessary force or severity[,]" *Siemiasz v. Landau*, 224 A.D. 284, 285 (N.Y. App. Div. 4th Dep't 1928), and cannot act in a way that was "not reasonably necessary" to

execute the search warrant and "potentially violate the Fourth Amendment[,]" *Onderdonk v. State*, 170 Misc. 2d 155, 162 (N.Y. Ct. Cl. 1996). Because reasonableness lies at the heart of both a Fourth Amendment claim and a claim under New York law, the issues are identical for collateral estoppel purposes.

**\*4** Second, the issues were actually litigated. The issue of whether the defendants engaged in "excessive conduct" while executing the search warrant was litigated in the Court of Claims when the court granted the State's motion for summary judgment. The court reasoned that "there is no evidence in the record to indicate that the officers overstepped the bounds of the warrants, that they engaged in excessive conduct in entering upon claimant's property, or that their execution of the warrants was accomplished with unnecessary force or severity." *Stegemann v. State*, No. 2016-032-163 (N.Y. Ct. Cl. Jan. 3, 2017). The Court of Claims also decided the issue of whether the defendants "negligently destroyed [Stegemann's] property" in the course of executing the search warrant. *Stegemann v. State*, 163 A.D.3d 1303, 1304 (N.Y. App. Div. 3d Dep't 2018); *see also Halyalkar v. Bd. of Regents of State of N.Y.*, 72 N.Y.2d 261, 268 (1988) ("For a question to have been actually litigated ..., it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding.").

Third, the issue was necessary to the resolution of the motion for summary judgment in the Court of Claims. As discussed above, the reasonableness of the officers' actions was necessary to determine if they negligently destroyed Stegemann's property. *See Kret by Kret v. Brookdale Hosp. Med. Ctr.*, 93 A.D.2d 449, 458–59 (N.Y. App. Div. 2d Dep't 1983) (holding that an issue was necessarily decided where a decision on that issue was required to reach a verdict and a contrary decision in subsequent litigation would contradict that verdict).

Fourth, Stegemann had a full and fair opportunity to litigate this issue. "[A] determination whether a full and fair hearing was provided requires consideration of the realities of the prior litigation." *In re Sokol*, 113 F.3d 303, 307 (2d Cir. 1997) (internal quotation marks and alteration omitted) (applying New York law). "Factors to be considered include, *inter alia*: 1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of litigation in the prior forum; and 3) the foreseeability of future litigation (because of its impact on the incentive to litigate in the first proceeding)." *Id.* Here, Stegemann had an opportunity to raise a genuine issue of material fact on

2021 WL 5492966

summary judgment in the Court of Claims. Further, he had another full and fair opportunity to litigate when he appealed the decision to the Third Department. Accordingly, the district court properly dismissed the excessive force claim as barred by collateral estoppel.

### IV. Subsurface's Motion for Summary Judgment

Finally, Stegemann challenges the district court's grant of summary judgment to Subsurface on the claims against it, which related to its alleged participation in the destruction of his property in connection with the execution of the search warrant. We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013) (*per curiam*). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

"The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citation omitted). "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *Id.* Stegemann did not offer any evidence establishing that Subsurface destroyed any property when it conducted a ground penetrating radar ("GPR") survey. Indeed, the

uncontroverted evidence in the record demonstrated that Subsurface was not hired to excavate Stegemann's property, the GPR unit rolled over the ground in a gentle manner like a baby carriage, no excavation was necessary for the survey, and Subsurface did not have the manpower or equipment to excavate the property.

**\*5** Stegemann argues that there was an issue of fact regarding who conducted excavations on his property after Subsurface completed the GPR survey. However, this argument is meritless because, as the district court concluded, the record is devoid of evidence that Subsurface excavated Stegemann's property. The fact that excavation was mentioned in the GPR report is not evidence that Subsurface did the excavation. Nor is the fact that excavations occurred after Subsurface surveyed the property sufficient to raise a genuine issue of fact precluding summary judgment. Subsurface offered evidence that it did not excavate—and could not have excavated—and Stegemann offered no evidence to controvert these facts. Accordingly, summary judgment was properly granted in Subsurface's favor.

\* \* \*

We have considered all of Stegemann's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 5492966

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 375098
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Roderick C. ARRINGTON, Plaintiff,

v.

Andrew C. LOTEMPIO, et al., Defendants.

22-CV-6141-FPG

|

Signed January 24, 2023

**Attorneys and Law Firms**

Roderick C. Arrington, Lockport, NY, Pro Se.

ORDER

FRANK P. GERACI, JR., United States District Judge

**\*1**   *Pro se* Plaintiff Roderick C. Arrington, who was previously incarcerated at the Cattaraugus County Jail ("the Jail"), has submitted a Complaint seeking relief pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). He is seeking monetary damages related to his 2017 criminal prosecution and conviction in this Court, 1:15-cr-00033. Plaintiff appealed his conviction, and the United States Court of Appeals for the Second Circuit remanded the case for a new trial. *See United States v. Arrington*, 941 F.3d 24 (2d Cir. 2019) (remanding case for new trial based on the district court's failure to obtain Plaintiff's knowing and intelligent waiver of his trial counsel's conflict of interest). A new trial was held before District Judge Richard J. Arcara in September and October 2022, which resulted in a mistrial due to a "deadlocked" jury, *see* 1:15-cr-00033, ECF No. 883. Plaintiff's case was subsequently transferred to Chief Judge Elizabeth A. Wolford, *id.* at 890, and is scheduled for a status conference, *id.* at 927.

Plaintiff was previously granted leave to proceed *in forma pauperis*, and the Complaint was dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A with leave to amend. ECF No. 14 (first screening order). Currently pending before the Court is the Amended Complaint. For the reasons that follow, Plaintiff's illegal search and denial of fair trial claims are dismissed without prejudice pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff's previously asserted conditions of confinement and equal protection claims, which have not been repleaded in the Amended Complaint, are dismissed with prejudice under §§ 1915(e)(2)(B) and 1915A.

DISCUSSION

**I. Legal Standard**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b) (1)-(2); 28 U.S.C. § 1915(e)(2)(B).

**A. The Amended Complaint**

In evaluating the Amended Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a [*pro se*] claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *See Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

**B. Section 1983 and *Bivens* Claims**

**\*2**   Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and *Bivens*. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or

immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir. 1997). Some of the Defendants are employees of the federal government, and, as such, they are not deemed persons acting under color of state law. Section 1983 does not create a cause of action against persons who act under color of federal law. *See* 42 U.S.C. § 1983. However, the Court construes Plaintiff's claims against the federal Defendants as claims brought under *Bivens. See Tavarez v. Reno,* 54 F.3d 109, 109-10 (2d Cir. 1995) (finding that "[a]lthough Tavarez brought the action [against federal officials] under § 1983, the district court properly construed the complaint as an action under *Bivens*"). [1]

---

[1]    The Court notes that under the United States Supreme Court's decision in *Ziglar v. Abbassi,* 137 S. Ct. 1843 (2017), there is an initial question herein whether *Bivens* provides an avenue for relief to Plaintiff. In *Ziglar,* the Court stated that when determining whether to extend an implied right of action under *Bivens* to a "new context," the courts must be hesitant and consider whether there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Ziglar,* 137 S. Ct. at 1857 (internal quotations and omitted). This issue is not appropriately decided upon screening of a complaint pursuant to § 1915(e)(2) (B) and without briefing by the parties upon either a motion to dismiss or for summary judgment. Therefore, for purposes of initial screening only, the Court assumes a remedy under *Bivens* is available to Plaintiff in this action.

The relevant procedural background in Plaintiff's criminal case is detailed in the Court's first screening order. ECF No. at 14 at 4-5. [2] The Court assumes the parties' familiarity with those facts as well as allegations contained in the original Complaint, which are also detailed in the Court's first screening order. ECF No. 14 at 6-8. Plaintiff's amended allegations, as described below, are substantially similar to the original allegations.

---

[2]    In completing the narrative of the original Complaint, the Court took judicial notice of the Second Circuit's decision in *Arrington,* 941 F.3d 24, "to establish its existence" and note "certain factual findings" that are necessary to provide

context to the present action. *Hurd v. Fredenburgh,* 984 F.3d 1075, 1083 (2d Cir. 2021).

**C. Claims against Defendant LoTempio**

In the first screening order, the Court dismissed with leave to amend Plaintiff's claims against his former defense attorneys, Andrew LoTempio and Robert Singer, because Plaintiff failed to allege nonconclusory facts to establish that either attorney has been acting under color of federal law for purposes of a *Bivens* claim. That is, Plaintiff failed to allege (1) any agreement between his attorneys and the federal prosecutors "to inflict an unconstitutional injury," or (2) any overt act done in furtherance of such an agreement. *See* ECF No. 14 at 8-9.

In the Amended Complaint, Plaintiff specifically alleges that LoTempio violated his right to a fair trial when he conspired with Assistant United States Attorney ("AUSA") Wei Xiang to play "Good cop Bad cop" on the morning of jury selection for Plaintiff's 2017 trial and "coerced and flipped" Plaintiff's co-defendant, Marcel Worthy, "into a last minute cooperation plea deal." ECF No. 17 at 12. The first screening order found that AUSA Xiang was absolutely immune for all actions taken as an exercise of his prosecutorial discretion, including engaging in plea negotiations and entering into plea agreements. ECF No. 14 at 10-11.

**\*3**  As the Court previously advised Plaintiff, to pursue a claim against Defendant LoTempio, ECF No. 14 at 8-9, he must allege "an agreement" between LoTempio and the federal prosecutor "to act in concert" to deprive Plaintiff of a constitutional right. *Udechukwu v. City of New York,* 333 F. Supp. 3d 161, 169 (E.D.N.Y. 2018) (quoting *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999)). A claim based on the denial of a fair trial "finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments." *Bailey v. City of New York,* 79 F. Supp. 3d 424, 445 (E.D.N.Y. 2015) (citing *Holbrook v. Flynn,* 475 U.S. 560, 567 (1986) (recognizing that the Sixth and Fourteenth Amendments secure the constitutional right to a fair trial)). To sustain a fair trial claim, "a plaintiff must demonstrate that '(1) an investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.' " *Case v. City of New York,* 408 F. Supp. 3d 313, 322 (S.D.N.Y. 2019) (quoting *Caravalho v. City of New York,* 732 F. App'x 18, 24 (2d Cir. 2018)).

Here, Plaintiff does not specifically allege that he was denied a fair trial based on the "flip[ing]" of his co-defendant. The Amended Complaint does not allege that Worthy testified falsely against him at trial, *see Soomro v. City of New York,* 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (noting that to meet the elements of a denial of fair trial claim, plaintiff must allege that false or fabricated evidence "that is likely to influence a jury's decision" was distributed to the prosecution), and he was not the only witness to testify that Plaintiff shot the victim, *see Arrington,* 941 F.3d at 35 ("Another witness, Ja'Quan Johnson, testified that Arrington shot [the victim] and that in the days leading up to the shooting, Arrington asked people in the neighborhood about [the victim's] whereabouts."). The Amended Complaint is, further, devoid of non-conclusory allegations that AUSA Xiang entered an agreement or acted in concert with LoTempio to (1) "flip" Worthy or (2) deprive Plaintiff of his right to a fair trial. A pleading that alleges "naked assertions devoid of further factual enhancement" is insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (alteration and internal quotation marks omitted).

Moreover, even assuming that Plaintiff has adequately alleged a conspiracy with the prosecution for purposes of bringing a *Bivens* claim against his defense attorney, the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994), precludes claims for damages that (1) necessarily have the effect of challenging a criminal conviction that (2) has not been terminated in a plaintiff's favor.

It has been held that reversal of a conviction and remand for a new trial does not constitute a favorable termination. *See Thomas v. Mason,* No. 1:17-CV-626 (DJS), 2019 WL 6111572, at *2-3 (N.D.N.Y. Nov. 18, 2019) (holding that the reversal of a criminal conviction with a remand for a new trial is not a favorable termination within the meaning of *Heck* and that plaintiff's "fabricated-evidence claim accrued upon his ultimate acquittal, not the reversal of his initial conviction"); *McDonough v. Smith,* 139 S. Ct. 2149, 2161 (2019) (addressing retrial after mistrial and stating that "[t]he statute of limitations for McDonough's § 1983 claim alleging that he was prosecuted using fabricated evidence began to run when the criminal proceedings against him terminated in his favor—that is, when he was acquitted at the end of his second trial"); *accord Poventud v. City of New York,* 750 F.3d 121, 131 (2d Cir. 2014) ("Although in some instances a habeas court may terminate a criminal proceeding in the defendant's favor, the reversal of a conviction and remand for a new trial does not constitute such a termination.").

**\*4**  It is well settled that "not every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination.... A plaintiff need not prove that any conviction stemming from an incident with the police has been invalidated, only a conviction that could not be reconciled with the claims of his civil action." *Poventud,* 750 F.3d 121 at 132. In this case, Plaintiff asserts a claim for denial of a fair trial, based on his codefendant's cooperation plea deal and as well as the confiscation of his trial materials and fabricated evidence stemming from cell searches (see below). "A section 1983 claim for the denial of a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction." *Bailey,* 79 F. Supp. 3d at 445. "Where a plaintiff's right to a fair trial claim would necessarily impugn the validity of his conviction, 'the complaint must be dismissed unless [he] can demonstrate that the conviction or sentence has already been invalidated.' " *Id.* (quoting *Heck,* 512 U.S. at 487). The Court finds that Plaintiff's fair trial claim necessarily impugns the validity of his conviction. Because his criminal case has been remanded for a new trial and is still pending, his fair trial claim has not yet accrued. It is therefore dismissed without prejudice under *Heck* as to all Defendants in this action.

### D. Jail Cell Search

Plaintiff alleges that his jail cell was illegally searched by FBI Agents Jared Fitzgerald and Rob Colunga, in an effort to investigate Plaintiff "for uncharged crimes" and at the request of federal prosecutors, Bethany Lipman and Jeremiah Lenihan. ECF No. 17 at 15.

In the first screening order, ECF No. 14 at 12-13, this Court addressed Plaintiff's claim that his jail cell was searched pursuant to a protective order directing that he "surrender" certain legal material "currently in [his] possession to the Jail staff upon entry of [the protective] order." ECF No. 1 at 37. The Court noted that the protective order was issued by United States District Judge Arcara in his criminal case, and he has had the opportunity to address the order, and its enforcement, during his criminal proceedings. ECF No. 1 at 37; 15-CR-0033-RJA; *see United States v. Arrington,* No. 15-CR-33-A, 2022 WL 3229843, at *3 (W.D.N.Y. Aug. 10, 2022) (denying Arrington's motion to dismiss the superseding indictment based on the same search allegations). The Court dismissed these claims accordingly.

In the Amended Complaint, Plaintiff appears to reassert this same allegations, ECF No. 17 at 16, and well as

new cell search and fabricated evidence claims against Defendant Colunga. Plaintiff alleges that Special Agent Colunga conducted an "illegal investigatory search" in connection to a "cold case homicide" and created "new evidence" in Plaintiff's pending criminal case by planting Plaintiff's DNA sample on a firearm. ECF No. 17 at 15. The Court finds that all of Plaintiff's illegal search claims are related to his criminal case, he has raised the same challenges in motions filed in that case, and he has received or is awaiting rulings on these challenges. *See Arrington,* 2022 WL 3229843, at *3; 15-cr-00033-EAW, ECF No. 922.

Because Plaintiff is awaiting trial, the appropriate vehicle for alleging violations of his constitutional rights in that case is indeed pretrial motions, not a § 1983 action. Moreover, under the principle set forth in *Younger v. Harris,* 401 U.S. 37 (1971), and its progeny, the Court must abstain from intervening in Plaintiff's pending criminal proceedings. To the extent that Plaintiff seeks damages as opposed injunctive relief, because his criminal case has not been terminated in his favor, as state above, his claims are barred by *Heck* because they necessarily impugn the validity of his conviction.

### E. Previously Asserted § 1983 Claims

In the first screening order, the Court dismissed Plaintiff's conditions of confinement and equal protection claims for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. ECF No. 14 at 13-15. Although Plaintiff was granted leave to amend these claims, he did not replead them in the Amended Complaint. The Court deems these claim abandoned, and, consequently, they are now dismissed

with prejudice. *See McFadden v. Annucci,* No. 18-CV-6684-FPG, 2021 WL 4942064, at *10 (W.D.N.Y. Oct. 22, 2021) (dismissing claim previously dismissed without prejudice as abandoned).

### CONCLUSION

**\*5** For the reasons discussed above, Plaintiff's fair trial and illegal search claims are dismissed without prejudice pursuant to the favorable termination rule set forth in *Heck v. Humphrey,* 512 U.S. 477 (1994). Plaintiff's remaining claims are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The Clerk of Court is directed to close this case as dismissed.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 375098

---

KeyCite Blue Flag – Appeal Notification

Appeal Filed by    BRAITHWAITE v. COLLINS,    2nd Cir.,    March 28, 2023

2023 WL 2350030

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Keston BRAITHWAITE, Plaintiff,

v.

Honorable John B. COLLINS, Justice Supreme Court, Suffolk County; Timothy Sini, District Attorney, Suffolk County; Meaghan Powers, Assistant District Attorney, Suffolk County; Wayne Heter, Suffolk County Police Department; John Doe, Suffolk County Police Department; Hon. Timothy P. Mazzei, Justice Supreme Court; Jacob Kubetz, Assistant District Attorney, Suffolk County; Brian M. Karp, D/Sgt. Badge # 0639, Suffolk County Police Department; Michael Cosgrove, D/Sgt. Badge # 0539, Suffolk County Police Department; Daniel Fischer, D/Sgt. Badge # 0611, Suffolk County Police Department; Ghysline C. McBean, Badge # 1212, Suffolk County Police Department; Richard Palazzolo, Badge # 1323, Suffolk County Police Department; Michael Papocchia, Suffolk County Police Department; Sean C. Comiskey, Badge # 1251, Suffolk County Police Department; Charles Flacker, Badge # 1334, Suffolk County Police Department; Erik M. Perelli, D/Sgt. Badge # 633, Suffolk County Police Department; Detective Neknez, Badge # 1515, Suffolk County Police Department; Detective Cianfrogna, Badge # 1475, Suffolk County Police Department; Detective Krolikiewicz, Badge # 1531, Suffolk County Police Department; Detective Saleh, Badge # 1533, Suffolk County Police Department; Detective Colby, Badge # 1656, Suffolk County Police Department; John Doe #2, Foreperson/Grand Juror No. 8A; John Doe #3, Assistant Foreperson/Grand Juror No. 8A; John Does #4-21; Clerks of the Court at 210 Center Drive, Riverhead, NY; John Doe #22, Assistant District Attorney; Suffolk County Police Department; Suffolk County District Attorney Office; Jason Russo, Esq.; Steven Gaitman, Esq.; Gaitman & Russo, PLLC; and, Steve Fondulis, Esq., Defendants.

Keston Braithwaite, Plaintiff,

v.

United States, the Capitol; Task Force Officer Corso, United States Marshal; Brian Grazidei, United States Marshal; John Seymour, United States Marshal; Kenneth Lopez, United States Marshal; Jason Langois, United States Marshal, Defendants.

Keston Braithwaite, Plaintiff,

v.

State of New York, Office the Attorney General; Suffolk County New York, H. Lee Dennison Building; Wayne Heter, Suffolk County Police Department; Brian Keegan, Suffolk County Police Department, Defendants.

Keston Braithwaite, Plaintiff,

v.

Suffolk County New York, H. Lee Dennison Building; New York State, Office of the Attorney General; Raymond Teirney, District Attorney, Suffolk County; Jacob Kubetz, Assistant District Attorney, Suffolk County; Meaghan Powers, Assistant District Attorney, Suffolk County; Kate Wagner, Assistant District Attorney, Suffolk County; John Doe, Chief of Special Narcotics Suffolk County; Honorable Timothy Mazzei, Supreme Court Justice; Honorable John Collins, Supreme Court Justice, Defendants.

Keston Braithwaite, Plaintiff,

v.

State of New York, Office of the Attorney General; Suffolk County, New York, H. Lee Dennison Building; Eric M. Perelli, Suffolk County Police Department; Detective Neknez, Suffolk County Police Department; Detective Cianfrogna, Suffolk County Police Department; Detective Saleh, Badge # 1533, Suffolk County Police Department; Detective Colby, Badge # 1656, Suffolk County Police Department, Defendants.

Keston Braithwaite, Plaintiff,

v.

Jacob Kubetz, Assistant District Attorney, Suffolk County; Wayne Heter, Suffolk County Police Department; T-Mobil US Inc., Telephone Carrier; Verizon, Telephone Carrier; Sytech Corporation, Innovator of Wiretap Systems, Defendants.

22-CV-00161(JS)(AYS), 22-CV-5070(JS)(AYS), 22-CV-5071(JS)(AYS), 22-CV-5073(JS)(AYS), 22-CV-5074(JS)(AYS), 22-CV-5359(JS)(AYS)

Signed March 3, 2023

**Attorneys and Law Firms**

For Plaintiff: Keston Braithwaite, pro se, 22-B-4593, Clinton Correctional Facility, P.O. Box 2000, Dannemora, New York 12929.

For Defendants: No appearance.

MEMORANDUM AND ORDER

SEYBERT, District Judge:

**\*1** Before the Court are the applications to proceed in forma pauperis ("IFP") (hereafter, the "IFP Applications") filed by incarcerated pro se plaintiff Keston Braithwaite ("Plaintiff") [1] in relation to his Complaints filed in the cases, captioned above, that challenge an underlying state criminal investigation, prosecution, and his conviction arising therefrom. [2] (See Case Docket Nos. 22-CV-5070, 22-CV-5071, 22-CV-5073, 22-CV-5074, and 22-CV-5359 (collectively, the "Post-Conviction Cases"), IFP Applications, ECF Nos. 2, respectively; see also Post-Conviction Cases, Compls., ECF Nos. 1, respectively (collectively, the "Post-Conviction Complaints").) In addition, Plaintiff has moved to re-open his original case in this Court, assigned Case No. 22-CV-00161 (hereafter, the "First Case"), following his conviction. (See First Case, No. 22-CV-00161, Re-Open Motion, ECF No. 31.) For the reasons that follow, Plaintiff's: (1) IFP Applications are GRANTED; (2) Motion to Re-Open the First Case is GRANTED; (3) Post-Conviction Complaints are CONSOLIDATED into the First Case (No. 22-CV-00161); and (4) claims are sua sponte DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

[1]     Plaintiff is a prolific filer in this Court. In addition to the six complaints addressed in this Memorandum and Order, Plaintiff has filed three other pro se in forma pauperis complaints also relating to his arrest and state court criminal prosecution:

(i) Braithwaite v. Gaitman, et al., No. 22-CV-0974(JS)(AYS), Memorandum & Order (E.D.N.Y. Oct. 24, 2022) (dismissing claims sua sponte pursuant 28 U.S.C. §§ 1915(e)(2)(b)(i)-(ii), 1915A(b)(1)) (docketed in case at ECF No. 19));

(ii) Braithwaite v. Suffolk County, et al., No. 22-CV-3750(JS)(AYS), Memorandum & Order (E.D.N.Y. Nov. 9, 2022) (dismissing claims sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1)) (docketed in case at ECF No. 10); see also id., Case Docket, at ECF No. 19 (Notice of Appeal filed Jan. 20, 2023); and

(iii) Braithwaite v. Tropea, et al., No. 23-CV-1431(JS)(AYS), Complaint (E.D.N.Y. Feb. 17, 2023) (case pending).

In addition, the Court notes Plaintiff has also raised many of the same claims against the same parties brought before this Court in five separate cases in state court. See:

(a) Braithwaite v. Verizon, Index No. 617779/2022, Supreme Court, Suffolk County;

(b) Braithwaite v. Sy Tech Corp., Index No. 617773/2022, Supreme Court, Suffolk County;

(c) Braithwaite v. T-Mobile USA, Inc., Index No. 617756/2022, Supreme Court, Suffolk County;

(d) Braithwaite v. Gaitman, Esq., Index No. 611821/2022, Supreme Court, Suffolk County; and

(e) Braithwaite v. Hon. John B. Collins, et al., Index No. 608298/2022, Supreme Court, Suffolk County.

[2]     On July 18, 2022, in Suffolk County Court, Criminal Term, Case No. 00308C-2020, Plaintiff was convicted by a jury on a multi-count indictment including: Operating as a Major Trafficker, a class A-1 felony; and Conspiracy in the Second Degree, a class B felony. See Braithwaite v. Gaitman, et al., No. 22-CV-00974(JS)(AYS), Memorandum & Order (ECF No. 19) at 3 n.3 (E.D.N.Y. Oct. 24, 2022) (citing https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022)).

BACKGROUND [3]

[3]     Excerpts from the Complaints are reproduced here exactly as they appear in the originals. Errors in spelling, punctuation, and grammar have not been corrected or noted.

I. Procedural History

**\*2** Plaintiff's Post-Conviction Complaints addressed in this Memorandum and Order, with notable overlap, all relate to the manner in which the Suffolk County District Attorney's Office, the individual assistant district attorneys, police officers and the Suffolk County Police Department, the United States and United States Marshals secured his grand jury indictment and conviction in the underlying state court criminal prosecution. Plaintiff also seeks to challenge the conduct of various actors involved in his underlying criminal proceedings, to wit, the state court judges, his criminal defense attorneys, the jurors, court clerks, and cellular service providers who allegedly conspired to convict him.

Given the volume of Plaintiff's filings addressed herein, which collectively total approximately 900 pages, the Court recites the relevant history and facts necessary to understand its determination reached in this Memorandum and Order.

A. Plaintiff's First Case, 22-CV-0161(JS)(AYS)

On January 10, 2022, while a pre-trial detainee on state criminal charges, Plaintiff filed a 52-page complaint against some 50 defendants using the Court's Section 1983 Complaint Form with 47 additional, handwritten pages attached. (See First Case, Compl., ECF No. 1.) The gravamen of Plaintiff's Complaint was that he was being unfairly prosecuted in state court during his then on-going criminal prosecution. (See generally id.) Thereafter, following Plaintiff's attempt to supplement his First Case Complaint, the Court permitted "Plaintiff to file an amended, stand-alone complaint" which he did. (See First Case, Feb. 11, 2022 Order, ECF No. 13;[4] Am. Compl. ECF No. 19.)

[4]    Also available on Westlaw at 2022 WL 426165.

The 243-page Amended Complaint (hereafter, the "First Case Amended Complaint") was brought against 43 defendants[5] raising 24 causes of action challenging his then on-going state court prosecution. According to the First Case Amended Complaint, the investigation leading to Plaintiff's arrest, his arrest, and his on-going prosecution violated Plaintiff's constitutional rights. Plaintiff alleged improprieties with, inter alia, wiretaps, video surveillance, his arrest, and court appearances (including the representation by his attorneys) and set forth broad claims of judicial and prosecutorial misconduct for which Plaintiff sought "the dismissal of all charges" in addition to $100 million in compensatory and punitive damages. (See First Case, Am. Compl. generally and at 241-42 (Part III: Relief).)

[5]    Plaintiff named the following defendants: Honorable John B. Collins, Justice Supreme Court; Timothy Sini, District Attorney, Suffolk County; Meaghan Powers, Assistant District Attorney, Suffolk County; Wayne Heter, Suffolk County Police Department; John Doe #1, Suffolk County Police Department; Hon. Timothy P. Mazzei, Justice Supreme Court; Jacob Kubetz, Assistant District Attorney Suffolk County; Brian M. Karp, Suffolk County Police Department; Michael Cosgrove, Suffolk County Police Department; Daniel Fischer, Suffolk County Police Department; Ghyshine C. McBean, Suffolk County Police Department; Richard Palazzolo, Suffolk County Police Department; Michael Papocchia, Suffolk County Police Department; Sean C. Cominskey, Suffolk County Police Department; Charles Flacker, Suffolk County Police Department; Erik M. Perelli, Suffolk County Police Department; Detective Neknez, Suffolk County Police Department; Detective Cianfrogna, Suffolk County Police Department; Detective Krolikiewicz, Suffolk County Police Department; Detective Saleh, Suffolk County Police Department; Detective Colby, Suffolk County Police Department; John Doe #2, Foreperson; John Doe #3, Assistant Foreperson; John Doe #4, Clerk of the Court; John Doe #5, Clerk of the Court; Suffolk County Police Department; Suffolk County District Attorney Office; John Does #6-21, Clerk of the Court; John Doe #22, Assistant District Attorney; Jason Russo Esq., Attorney of Law; Steven Gaitman Esq., Attorney of Law; Gaitman & Russo, PLLC, Law Office; Steve Fondulis Esq., Attorney of Law. (See First Case, Am. Compl., ECF No. 19.)

**\*3** By Memorandum and Order dated May 23, 2022, the Court granted Plaintiff's application to proceed in forma pauperis and sua sponte: (1) dismissed without prejudice Plaintiff's claims seeking injunctive relief (i.e., intervention in the ongoing state court criminal proceedings by dismissing the charges against Plaintiff) pursuant to Federal Rule of Civil Procedure 12(h)(3); and (2) stayed Plaintiff's claims seeking damages pending the conclusion of the underlying state criminal case with leave to re-open the First Case "within 30 days of the conclusion of his state court criminal proceedings, if so warranted at that time." (See First Case,

Memorandum & Order, ECF No. 21, in toto and at 10-11 (emphasis omitted).)

On July 18, 2022, in Suffolk County Court, Criminal Term, Case No. 00308C-2020, Plaintiff was convicted by a jury on a multi-count indictment including Operating as a Major Trafficker, a class A-1 felony, and Conspiracy in the Second Degree, a class B felony; he was sentenced on September 23, 2022. See Braithwaite v. Gaitman, et al., No. 22-CV-00974(JS)(AYS), Memorandum & Order (ECF No. 19) at 3 n.3 (citing https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022)). On September 30, 2022, Plaintiff timely requested that his First Case be re-opened given the conclusion of the state court criminal proceeding on September 23, 2022. (See Re-Open Motion, ECF No. 31 (dated Sept. 26, 2022).)

B. Plaintiff's Post-Conviction Complaints [6]

[6] Plaintiff filed four complaints on August 24, 2022 (Case Nos. 22-CV-5070, 22-CV-5071, 22-CV-5073, 22-CV-5074) and another complaint (Case No. 22-CV-5359) on September 6, 2022, all well after his July 18, 2022 conviction.

### 1. Case No. 22-CV-5070(JS)(AYS), Braithwaite v. United States, et al.

Plaintiff's 21-page Complaint names the United States and five United States Marshals: Task Force Officer Corso ("Corso"), Brian Grazidei ("Grazidei"), John Seymour ("Seymour"), Kenneth Lopez ("Lopez"), and Jason Langois ("Langois"); in it, Plaintiff challenges the alleged warrantless search of his apartment on May 19, 2020, and his warrantless arrest. (See Case No. 22-CV-5070(JS)(AYS), Compl., ECF No. 1, in toto.) Plaintiff used the Court's civil rights complaint form, checking the box indicating that his claims are brought pursuant to Bivens.[7] (Id. ¶ II. A.) He seeks to recover a damages award in the sum of $10 million. (Id. at 17.)

[7] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), permits suits against federal employees for violations of certain federal constitutional rights. Here, Plaintiff alleges that he suffered a deprivation of his Fourth, Eighth, and Fourteenth Amendment rights and

related state law claims. (See Compl., ECF No. 1, at 12.)

### 2. Case No. 22-CV-5071(JS)(AYS), Braithwaite v. State of New York, et al.

This 28-page Complaint is brought pursuant to 42 U.S.C. § 1983 against the State of New York ("NY State"), Suffolk County, and two Suffolk County Police Officers, Wayne Heter ("P.O. Heter") and Brian Keegan ("P.O. Keegan"), alleging a deprivation of Plaintiff's Fourteenth Amendment rights. (See Case No. 22-CV-5071(JS)(AYS), Compl., ECF No. 1, in toto.) More specifically, Plaintiff claims that P.O. Heter and P.O. Keegen committed perjury that resulted in Plaintiff's indictment and conviction. (Id. at 7.) Plaintiff's allegations against P.O. Heter are largely repetitive of his allegations set forth in the Amended Complaint filed in the First Case. (Compare id., in toto, with First Case Am. Compl, Case No. 22-CV-0161, ECF No. 19, in toto.) Further, Plaintiff claims that NY State and Suffolk County failed to properly train and supervise these officers. (See id. at 21.) For relief, Plaintiff seeks to recover a damages award in the total sum of $10 million. (See id. at 24.)

### 3. Case No. 22-CV-5073(JS)(AYS), Braithwaite v. Suffolk County, New York, et al.

**\*4** This 28-page Complaint, with an additional 17 pages of exhibits, is also brought pursuant to 42 U.S.C. § 1983 alleging a deprivation of Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights against NY State and Suffolk County, as well as the following defendants: the Suffolk County District Attorney Raymond A. Tierney ("D.A. Tierney"), Assistant District Attorneys Jacob Kubetz ("A.D.A. Kubetz"), Meaghan Powers ("A.D.A. Powers"), Kate Wagner ("A.D.A. Wagner"), and an unidentified prosecutor alleged to be the Chief of Special Narcotics ("John Doe"). Plaintiff further names two Justices of New York State Supreme Court, Suffolk County: Timothy Mazzei ("Judge Mazzei") and John B. Collins ("Judge Collins"). (See Case No. 22-CV-5073(JS)(AYS), Compl., ECF No. 1, in toto.) Here, Plaintiff alleges malicious prosecution claims challenging the grand jury proceedings and asserting that his warrantless arrest and the warrantless search of his apartment were unconstitutional; therefore, he should have never been indicted. (See id. at 9-15.) For relief, Plaintiff seeks the dismissal of the indictment and to recover a damages award of $10 million. (See id. at 25.)

#### 4. Case No. 22-CV-5074(JS)(AYS), Braithwaite v. State of New York, et al.

This 20-page Complaint, with an additional 16 pages of exhibits, is brought pursuant to 42 U.S.C. § 1983 against NY State, Suffolk County, and five Suffolk County Police Officers: Eric M. Perelli ("P.O. Perelli"), Detective Neknez ("Det. Neknez"), Detective Cianfrogna ("Det. Cianfrogna"), Detective Saleh ("Detective Saleh"), and Detective Colby ("Det. Colby"). Plaintiff alleges a deprivation of his Fourth, Eighth, and Fourteenth Amendment rights. (See Case No. 22-CV-5074(JS)(AYS), Compl., ECF No. 1, in toto, and at 12, 16.) Like the allegations set forth in Case Nos. 22-CV-0161 and 22-CV-5073, here, Plaintiff challenges the alleged warrantless search and arrest. His allegations against the individual officers are largely repetitive of his allegations set forth in the First Case Amended Complaint. For relief, Plaintiff seeks a $10 million damages award. (See id. at 16-17.)

#### 5. Case No. 22-CV-5359(JS)(AYS), Braithwaite v. Jacob Kubetz, A.D.A., et al.

Plaintiff's 45-page Complaint in this action, with an additional 351 pages of exhibits, is brought pursuant to 42 U.S.C. § 1983 against A.D.A. Kubetz, P.O. Heter, T-Mobile US Inc. ("T-Mobile"), Verizon, and Sy Tech Corporation ("Sy Tech"), with Plaintiff alleging a deprivation of his Fourth and Fourteenth Amendment rights. (See Case No. 22-CV-5359(JS)(AYS), Compl., ECF No. 1, in toto, and at 6.) The allegations here against A.D.A. Kubetz and P.O. Heter are largely the same as the allegations raised against them in Plaintiff's First Case. The gravamen of this Complaint is that cell phone service providers T-Mobile and Verizon provided law enforcement with Plaintiff's location data without his permission or consent. (See id. at 6-7.) Plaintiff claims that Defendants conspired to deprive Plaintiff of his Fourth Amendment right to be free from unreasonable searches. (See id. at 8.) According to the Complaint, the state "court issued an eavesdropping warrant that governs oral and electronic communications", but Defendants did not have a warrant to collect "ping data" as to Plaintiff's location; thus, the use of that ping data against Plaintiff during the underlying criminal trial was prejudicial. (See id. at 8-9.) For relief, Plaintiff seeks both a $50 million damages award and the criminal prosecution of the Defendants. (Id. at 38-42.)

### DISCUSSION

#### I. Plaintiff's In Forma Pauperis Applications are Granted

Having reviewed his financial status, the Court finds that Plaintiff is qualified to commence these actions without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's IFP Applications are GRANTED.

#### II. Consolidation

Under Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). "The trial court has broad discretion to determine whether consolidation is appropriate." Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990). Consolidation of cases with common questions of law or fact is favored "to avoid unnecessary costs or delay," Johnson, 899 F.2d at 1284, and to "expedite trial and eliminate unnecessary repetition and confusion," Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 130 (internal citations omitted). Further, "[t]he Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations. Where there are several competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." Kellen Co., Inc. v. Calphalon Corp., 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (cleaned up); accord Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989). The first-filed rule seeks to conserve judicial resources and avoid duplicative litigation. See Jacobs, 950 F.2d at 92; First City Nat'l Bank & Trust Co., 878 F.2d at 80; Kellen, 54 F. Supp. 2d at 221.

**\*5** Here, Plaintiff's Post-Conviction Complaints and the First Case Amended Complaint all seek to challenge, inter alia, the investigation leading to Plaintiff's arrest, the alleged warrantless search of his apartment, his arrest, and the presentation of evidence to the grand jury in the underlying state court criminal prosecution. Although the First Case was filed pre-conviction, the Post-Conviction Complaints and First Case Amended Complaint involve common issues of law and fact. Accordingly, in the sound exercise of its discretion and pursuant to Rule 42 of

Federal Rule of Civil Procedure 42, the Court orders that Plaintiff's Post-Conviction Cases be CONSOLIDATED into Plaintiff's First Case, Case No. 22-CV-0161(JS)(AYS). The Clerk of Court is DIRECTED to: (1) consolidate these actions; and (2) thereafter, mark the cases assigned Case Nos. 22-CV-5070(JS)(AYS), 22-CV-5071(JS)(AYS), 22-CV-5073(JS)(AYS), 22-CV-5074(JS)(AYS), and 22-CV-5359(JS)(AYS) CLOSED. Any future filings are to be docketed in **only in the First Case, No. 22-CV-0161(JS) (AYS)**.

III. Consideration of First Case Amended Complaint Under the Section § 1915A Analysis

    A. Applicable Law

        1. 28 U.S.C. § 1915A

Section 1915A of Title 28 requires federal district courts to screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's civil rights complaint, or any portion of that complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint without prejudice if the Court lacks subject matter jurisdiction. See FED. R. CIV. P. 12(h)(3). The Court is required to dismiss the action as soon as it makes such a determination. See 28 U.S.C. § 1915A; Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *2 (E.D.N.Y. May 18, 2021).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

        2. Section 1983 and *Bivens*

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356 (2012). To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

  **\*6** A claim alleging a deprivation of a constitutional right against federal officials is properly brought pursuant to Bivens and is narrower than Section 1983. Indeed:

> [o]ver the past half-century, the [U.S. Supreme] Court has endorsed such a claim in only three instances: (1) unlawful search of a home and warrantless arrest in violation of the Fourth Amendment, Bivens, 403 U.S. at 395-97; (2) employment discrimination based on gender in violation of the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228 (1979); and (3) inadequate medical treatment of a prisoner, resulting in the prisoner's death, in violation of the Eighth Amendment, Carlson v. Green, 446 U.S. 14 (1980). "After those decisions, however, the Court changed course." Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020). Today, the Supreme Court has warned, expanding Bivens is a "disfavored" judicial activity. Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017).

Fisher v. Bureau of Alcohol, Tobacco & Firearms (ATF), et al., No. 22-CV-6440, 2023 WL 2082552, at *10–11 (W.D.N.Y. Feb. 17, 2023) (quoting Komatsu v. United States, No. 21-CV-1838, 2023 WL 317326, at *5 (S.D.N.Y. Jan. 19, 2023)).

Liberally construed, Plaintiff alleges deprivations of his right to be free from unlawful searches and seizures and the right to a fair trial. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...," and further provides that "no Warrants shall issue, but upon probable cause...." Const. amend IV; see also United States v. Barner, 666 F.3d 79, 82 (2d Cir. 2012) ("The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy.") (quoting United States v. Newton, 369 F.3d 659, 664 (2d Cir. 2004)). "Based on this constitutional text, the Court has repeatedly held that searches conducted outside the judicial process, without prior approval by a [a] judge or [a] magistrate [judge], are per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." City of Los Angeles, Cal. v. Patel, 576 U.S. 409, 419 (2015) (internal quotation marks omitted) (quoting Arizona v. Gant, 556 U.S. 332, 338 (2009)).

"A claim based on the denial of a fair trial 'finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments.' " Arrington v. LoTempio, No. 22-CV-6141, 2023 WL 375098, at *2 (W.D.N.Y. Jan. 24, 2023) (quoting Bailey v. City of N.Y., 79 F. Supp. 3d 424, 445 (E.D.N.Y. 2015) (citing Holbrook v. Flynn, 475 U.S. 560, 567 (1986) (recognizing that the Sixth and Fourteenth Amendments secure the constitutional right to a fair trial)). A plaintiff alleging a fair trial claim "must demonstrate that '(1) an investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.' " Case v. City of N.Y., 408 F. Supp. 3d 313, 322 (S.D.N.Y. 2019) (quoting Caravalho v. City of N.Y., 732 F. App'x 18, 24 (2d Cir. 2018)).

B. Application

1. *Heck v. Humphrey* Bars Plaintiff's Section 1983 and *Bivens* Claims

**\*7** When a claim under Section 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. Heck v. Humphrey, 512 U.S. 477, 487 (1994); Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (Heck's bar applies regardless of whether a plaintiff seeks damages or injunctive relief). The petitioner in Heck was an inmate with a direct appeal from his conviction pending, who brought a Section 1983 action for damages against state officials who, he claimed, acted unconstitutionally in arresting and prosecuting him. Drawing an analogy to the tort of malicious prosecution, the Supreme Court held that an inmate's Section 1983 claim for damages was unavailable because he could not demonstrate that the underlying criminal proceedings had terminated in his favor. Id. at 486–87. In Heck, the Supreme Court enumerated four methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition was issued by a federal court; or (4) an authorized state tribunal declared the conviction invalid. Id.

Here, on July 18, 2022, in Suffolk County Court, Criminal Term, Index No. 00308C-2020, Plaintiff was convicted by a jury on a multi-count indictment including Operating as a Major Trafficker, a class A-1 felony, and Conspiracy in the Second Degree, a class B felony. See Braithwaite v. Gaitman, et al., No. 22-CV-00974(JS)(AYS), Memorandum & Order (ECF No. 19) at 3 n.3 (E.D.N.Y. Oct. 24, 2022) (citing https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022)). He was sentenced on September 23, 2022. See, e.g., Braithwaite v. Tropea, No. 23-CV-1431 (JS)(AYS), Ex. 18 (ECF No. 7-4 at ECF pp.32-96) (E.D.N.Y. 2023) (Sept. 23, 2022 Sent'g Hr'g Tr.). As is readily apparent, affording the pro se First Case Amended Complaint, as well as the Post-Conviction Complaints, a liberal construction, there is no allegation that Plaintiff's conviction has been invalidated. Indeed, all of these Complaints were filed in this Court before Plaintiff was sentenced. Because Plaintiff's success on his civil rights claims in his consolidated cases would necessarily invalidate the conviction, which is not alleged to have been reversed or vacated, Plaintiff's Section 1983 and Bivens claims are not cognizable under Heck. Thus, Heck's bar precludes their adjudication. [8] Indeed, Plaintiff's Fourth Amendment claims relate to the search of his apartment

and his arrest from which his conviction followed. As is readily apparent, "[a] judgment in Plaintiff's favor on the unlawful search and seizure claim would clearly imply the invalidity of his conviction, and the claim is therefore barred by Heck v. Humphrey." Curtis v. Rockland County, No. 21-CV-04294, 2022 WL 16540705, at *5 (S.D.N.Y. Oct. 28, 2022). Moreover, the Second Circuit has made clear that, "when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom." Stegemann v. Rensselaer County Sheriff's Off., No. 20-CV-3316, 2021 WL 5492966, at *2 (2d Cir. Nov. 23, 2021) (citing Heck, 512 U.S. at 487 n.7).

8        Although "[Section] 1983 remains a possible remedy when there is no other federal avenue through which to bring a claim," Chillemi v. Town of Southampton, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013), Plaintiff has the opportunity to seek habeas relief once his constitutional claims are properly exhausted in state court.

Given that Plaintiff has not alleged any injury other than those related to his conviction and imprisonment, which he asserts resulted from the alleged warrantless search and arrest, he cannot recover any damages for these injuries unless and until his conviction is overturned. See, e.g., Curtis v. Rockland County, No. 21-CV-4294, 2022 WL 16540705, at *5 (S.D.N.Y. Oct. 28, 2022). Accordingly, Plaintiff's Section 1983 and Bivens [9] claims are not plausible and are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). See Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006) ("allegations of extensive conspiratorial misconduct between defense counsel and the prosecution would render the [plaintiff's] convictions invalid if they were proved" and, thus, are barred by Heck); Whaley v. Lopez, No. 12–CV–2889, 2012 WL 3137900, at *7 (E.D.N.Y. July 30, 2012) (prosecutorial misconduct claim is barred because such conduct necessarily implies invalidity of the conviction (citing Kevilly v. New York, 410 F. App'x 371, 374 (2d Cir. 2010))); see also Arrington, 2023 WL 375098 at *3-4 (sua sponte dismissing plaintiff's illegal search and denial-of-fair-trial claims without prejudice pursuant to Heck, including related conspiracy claims, brought pursuant to Section 1983 and Bivens).

9        Further, "Bivens claims do not lie against federal employees in their official capacities, because such

suits are considered actions against the United States and are barred by the doctrine of sovereign immunity." Wright v. Condit, No. 13-CV-2849, 2015 WL 708607, at *1 (S.D.N.Y. Feb. 18, 2015) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994)). Therefore, Plaintiff cannot pursue his constitutional claims against the individual unnamed employees in their official capacities.

2.  Section 1983 Claims Against Jason Russo, Esq., Steven Gaitman, Esq., Gaitman & Russo, PLLC, Steve Fondulis, Esq., Verizon, T-Mobile, Sy Tech, and the Grand Jurors

*8  Although Heck bars Plaintiff's claims seeking to impose Section 1983 liability on his criminal defense attorneys, three cellular service providers, and the Grand Jurors who indicted him, such claims are not plausible for the additional reason that none of these Defendants are state actors. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.' " Hooda v. Brookhaven Nat'l Lab., 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982)). Accordingly, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." Flagg v. Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted); Fabrikant v. French, 691 F.3d 193, 206 (2d Cir. 2012) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [ ] required to show state action." (internal quotation marks and citation omitted)). Indeed, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted).

A private actor, such as these Defendants, may be considered as acting under the color of state law for purposes of Section 1983 if the private actor was a " 'willful participant in joint activity with the State or its agents.' " Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). Section 1983 liability may also extend to a private party who conspires with a state actor to violate a plaintiff's constitutional rights. See Ciambriello, 292 F.3d at 323-24. In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an

overt act done in furtherance of that goal causing damages." Id. at 324-25 (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)). Indeed, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Id. at 324 (internal quotation marks omitted).

Here, insofar as Plaintiff seeks to impose liability on his defense attorneys for his claimed constitutional deprivations, such claims are not plausible because these defendants are not state actors. Attorneys, whether court-appointed or privately retained, are generally not state actors for purposes of Section 1983. See, e.g., Polk County v. Dodson, 454 U.S. 312, 325 (1981); see also Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"). Nor has Plaintiff sufficiently alleged that any of these Defendants acted jointly with a state actor or conspired with a state actor to deprive Plaintiff of some constitutional right. Although Plaintiff's voluminous submissions are replete with broad allegations of a conspiracy, his merely conclusory allegations with no supporting factual averments are insufficient to state a conspiracy. Thus, in the absence of any state action, Plaintiff's Section 1983 claims against Jason Russo, Esq., Steven Gaitman, Esq., Gaitman & Russo, PLLC, Steve Fondulis, Esq.,[10] Verizon, T-Mobile, Sy Tech, and the Grand Jurors are not plausible as a matter of law. See Ciambriello, 292 F.3d at 325. Hence, Plaintiff's Section 1983 claims against Jason Russo, Esq., Steven Gaitman, Esq., Gaitman & Russo, PLLC, Steve Fondulis, Esq., Verizon, T-Mobile, Sy Tech, and the Grand Jurors are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

[10]     Though far from clear, to the extent Plaintiff seeks to assert a cause of action against his criminal defense attorneys based upon the theory of ineffective assistance of counsel, "an ineffectiveness [claim is not actionable] in a proceeding brought under § 1983." Bourdon v. Loughren, 386 F.3d 88, 90 (2d Cir. 2004).

### 3. Section 1983 Claims Against Judge Collins and Judge Mazzei

**\*9** Further, Plaintiff's Section 1983 claims against Judges Collins and Mazzei are subject to dismissal for the additional reasons that, as judges employed by the state of New York, they are absolutely immune from suit. It is well-established that judges "generally have absolute immunity" from suit for judicial acts performed in their judicial capacities. Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991)). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." Mireles, 502 U.S. at 11, 13 (internal quotation marks and citation omitted; ellipsis in original). Rather, judicial immunity is overcome in only two instances. The first instance is "liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Bliven, 579 F.3d at 209 (quoting Mireles, 502 U.S. at 11). The second instance is liability arising from actions taken " 'in the complete absence of all jurisdiction.' " Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (quoting Mireles, 502 U.S. at 11-12; emphasis in the original). Here, nothing in Plaintiff's First Case Amended Complaint or his Post-Conviction Complaints suggests that either exception applies to overcome absolute judicial immunity. Although Plaintiff complains that the judges acted without jurisdiction, such allegations are belied by the fact that Plaintiff was tried and convicted in the state court. There can be no doubt that state court prosecution for violations of state laws relating to drug possession and weapon possession is the very kind of case over which state courts have jurisdiction. Accordingly, Plaintiff's claims against Judges Collins and Mazzei are not plausible as a matter of law and are thus DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### 4. Section 1983 Claims Against DA Sini, DA Tierney, ADA Kubetz, ADA Powers, and ADA Wagner

It is well-established that prosecutors are absolutely immune from civil suits for acts committed within the scope of their official duties where the challenged activities are not investigative in nature, but rather are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Simon v. City of N.Y., 727 F.3d 167, 171 (2d Cir. 2013). The actions for which a prosecutor is entitled to absolute immunity "include deciding whether to bring charges and presenting a case to a grand jury or a court." Simon, 727 F.3d at 171; Shmueli v. City of N.Y., 424 F.3d 231, 237 (2d Cir. 2005).

Here, Plaintiff alleges that the "District Attorney knowingly and intentionally presented Plaintiff's case to the Grand Jury and took Plaintiff to trial knowing that there was no search warrant or arrest warrant in this case." (Case No. 22-CV-5073(JS)(AYS), Compl. at 9, 13.) Further, Plaintiff complains that ADA Kubetz disclosed during his criminal prosecution that the warrants at issue were "never completed and filed by the detective who executed the warrants." (Id. at 11.) Plaintiff further alleges that ADA Kubetz "supplied false documents which was a false warrant execution paperwork." (Id.) In addition, Plaintiff alleges in conclusory fashion that ADAs "Kate Wagner, Meaghan Powers and Jacob Kubetz under the District Attorney of Suffolk County maliciously prosecuted the Plaintiff." (Id. at 13.) Moreover, Plaintiff complains that after he declined a plea offer from ADA Kubetz and the Chief of Narcotics, the District Attorney proceeded to trial on the top indictment charge. (Id. at 14.)

The decision to bring charges and to pursue such charges are squarely within the scope of the judicial phase of the criminal process for which DA Sini, DA Tierney, ADA Kubetz, ADA Wagner, and ADA Powers are absolutely immune from suit. Moreover, trial disclosures, the presentation of evidence during a criminal prosecution, and plea bargaining are clearly within the judicial phase of the criminal proceeding. See Ogunkoya v. Monaghan, 913 F.3d 64, 72 (2d Cir. 2019) (explaining that prosecutors have absolute immunity for decisions and acts that "constituted an exercise of their prosecutorial discretion in preparing a case for indictment and deciding when, where, and how to prosecute"); Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986) (prosecutorial immunity "encompasses not only [prosecutors'] conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution, activities in deciding not to do so, and conduct of plea bargaining negotiations") (cleaned up). Thus, even if Plaintiff's Section 1983 claims were not barred by Heck and its progeny, DA Sini, DA Tierney, ADA Kubetz, ADA Powers, and ADA Wagner are shielded from suit by absolute prosecutorial immunity for the challenged actions undertaken during the judicial phase of the subject criminal proceeding. [11] "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery ... because an absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of

the immunity." Deronette v. City of N.Y., No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citations, alterations, and quotation marks omitted). Accordingly, these claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(2).

[11]    Notably, Plaintiff alleges that ADA Kubetz unlawfully obtained Plaintiff's location data from cell service providers beginning in February 2020. See Braithwaite v. Kubetz, et al., Case No. 22-CV-5359(JS)(AYS), Compl. at 6-9 (E.D.N.Y. 2022). Given that Heck's bar precludes adjudication of Plaintiff's Section 1983 claims (see supra at 22-25), the Court need not address the substance of Plaintiff's claims arguably pertaining to the investigative stage of the underlying criminal prosecution.

5. Claims Against the United States, NY State, and the Suffolk County District Attorney's Office

**\*10** Insofar as Plaintiff seeks relief against the United States and NY State, such claims are barred by sovereign immunity or Eleventh Amendment immunity, respectively. "The doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, including suits against its agencies, except where sovereign immunity has been waived." Roberts v. U.S. Marshals Serv., No. 21-CV-11234, 2022 WL 2986683, at *3 (S.D.N.Y. July 27, 2022) (citing United States v. Mitchell, 445 U.S. 535, 538 (1980) (additional citation omitted)).

With regard to NY State, " 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity....' " Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *2 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (quoting Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original)). "This immunity shields State from claims for money damages, injunctive relief, and retrospective declaratory relief." Griggs, 2021 WL 1535056, at *2 (citing Green v. Mansour, 474 U.S. 64, 72-74 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)). Further, "[a]s agencies of the State of New York, [a district attorney office is] entitled to immunity under the Eleventh Amendment." Carthen v. Gonzalez, No.

19-CV-6392, 2020 WL 376569, at *2 (E.D.N.Y. Jan. 23, 2020) (citing Ying Jing Gan v. City of N.Y., 996 F.2d 522, 535 (2d Cir. 1993) (District Attorney's Office is protected by the Eleventh Amendment)); London v. Nassau County Dist. Attorney's Off., No. 20-CV-3988, 2020 WL 7699644, at *7 (E.D.N.Y. Dec. 28, 2020) (Seybert, J.) ("Eleventh Amendment immunity requires dismissal of all of Plaintiff's Section 1983 claims seeking damages against the Nassau County District Attorney's Office.")

Thus, the United States, NY State, and the Suffolk County District Attorney's Office are shielded by immunity, rendering Plaintiff's Section 1983 claims implausible. Therefore, these claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### 6. Claims Against Suffolk County and the Suffolk County Police Department

It is well-established that a municipality, like Suffolk County, cannot be held liable under Section 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of N.Y. City, 436 U.S. 658, 691 (1978); Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020) ("Monell expressly prohibits respondeat superior liability for municipalities" (citations omitted)). Rather, to state a claim against a municipality under Section 1983, " 'the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.' " Tafolla v. County of Suffolk, No. 17-CV-4897, 2021 WL 3675042, at *10 (E.D.N.Y. Aug. 19, 2021) (Seybert, J.) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 314 (2d Cir. 2015)). To establish the existence of a municipal policy or custom, the plaintiff must allege:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread as to practically have the force of law or that was so manifest as to imply the constructive acquiescence

> of senior policy-making officials; or (4) that a policymaking official exhibited deliberate indifference to constitutional deprivations caused by subordinates.

**\*11** Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *3 (E.D.N.Y. May 18, 2021) (Seybert, J.) (cleaned up).

Here, when liberally construing the First Case Amended Complaint and the consolidated Post-Conviction Complaints, there are no factual allegations that a municipal policy or custom existed that caused the alleged constitutional deprivations of which Plaintiff complains. (See First Case Am. Compl. and Post-Conviction Compls., in toto.) Similarly, there are no allegations from which the Court could reasonably construe a plausible Section 1983 claim against Suffolk County. Thus, Plaintiff's Section 1983 claims against Suffolk County are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

Similarly, Plaintiff's claims against the Suffolk County Police Department (the "Police Department") are implausible. The Police Department cannot be sued because it is an "administrative arm," which does "not have a legal identity separate and apart from the municipality." Spagnuolo v. Suffolk County, No. 12-CV-4327, 2017 WL 4326510, at *2 (E.D.N.Y. Sept. 28, 2017) (citation omitted) (Seybert, J.), aff'd sub nom. Spagnuolo v. Howell, 814 F. App'x 614 (2d Cir. 2020); see also Sturgis v. Suffolk County Jail, No. 12-CV-5263, 2013 WL 245052, *2 (E.D.N.Y. Jan. 22, 2013) (sua sponte dismissing Section 1983 claims against the Suffolk County Police Department, among others, because it is an "administrative arm[ ] of the County of Suffolk [ ] [and] lack[s] the capacity to be sued"). Therefore, Plaintiff's claims against the Police Department are implausible and are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

### IV. State Law Claims

Given the dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims that may be alleged and dismisses them without prejudice. See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...."); Carnegie-

Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."). Plaintiff is presently pursuing five cases in state court relating to and largely repetitive of the pleadings filed in this Court (see supra at 5 n.1); he may pursue any valid state law claims raised here in state court.

V. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted here. Given that Plaintiff has already been afforded the opportunity to amend his complaint -- and has done so (see First Case Am. Compl.) -- together with the fact that his conviction precludes adjudication of his Section 1983 claims under Heck, amendment would be futile. See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."); Polanco v. Capra, et al., No. 22-CV-4475, 2023 WL 2242702, at *2 (S.D.N.Y. Feb. 27, 2023) ("District courts generally grant a pro se plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies.") (citing Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). Further, as noted, Plaintiff has raised many of the claims presented here in state court. (See supra at 5, n.1.) Accordingly, leave to further amend the First Case Amended Complaint and the Post-Conviction Complaints is DENIED. [12]

[12]    Such denial is without prejudice to Plaintiff pursuing habeas relief in a properly exhausted petition pursuant to 28 U.S.C. § 2254. Given that Plaintiff's direct appeal is presently pending, see People v. Braithwaite, Index No. 2022-9002 (App.

Div., 2d Dep't), such a habeas petition is premature at this time.

CONCLUSION

**\*12**    Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's IFP Applications are GRANTED;

**IT IS FURTHER ORDERED** that Plaintiff's cases captioned herein are CONSOLIDATED pursuant to Federal Rule of Civil Procedure 42 into the first filed case, No. 22 CV-0161(JS)(AYS). Thus, the Clerk of Court is DIRECTED to:

(1) CONSOLIDATE these actions; and

(2) mark CLOSED the cases assigned

Case Nos. 22-CV-5070(JS)(AYS), 22-CV-5071(JS)(AYS), 22-CV-5073(JS)(AYS), 22-CV-5074(JS)(AYS), and 22-CV-5359(JS)(AYS).

Any future filings are to be docketed in only Plaintiff's First Case, No. 22-CV-0161(JS)(AYS); and

**IT IS FURTHER ORDERED** that Plaintiff's First Case Amended Complaint and his consolidated Post-Conviction Complaints are sua sponte DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as set forth herein;

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. Therefore, in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum & Order to the pro se Plaintiff at his address of record, including the notation "LEGAL MAIL" on the envelope.

**All Citations**

Slip Copy, 2023 WL 2350030

2012 WL 2569085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ronald MOYE, Plaintiff,
v.
The CITY OF NEW YORK; Sgt. Nelson Caban,
P.O. Paul Jeselon, P.O. Samuel Fontanez, P.O.
Edward Simonetti, P.O. Matthew Boorman, P.O.
Frank Papa, P.O. Tawaina O'Neal, P.O. Brennan;
P.O. John; and A.D.A. Dustin Chao, Defendants.

No. 11 Civ. 316(PGG).
|
July 3, 2012.

### MEMORANDUM OPINION & ORDER

PAUL G. GARDEPHE, District Judge.

**\*1** Plaintiff Ronald Moye has brought claims against the City of New York, former New York County Assistant District Attorney Dustin Chao, and eight members of the New York City Police Department ("NYPD") under 42 U.S.C. § 1983 and state law. Moye claims that Chao is liable for damages under Section 1983 and state law for malicious prosecution, abuse of process, denial of a fair trial, fabrication of evidence, conspiracy "to inflict an unconstitutional injury," and intentional and negligent infliction of emotional distress. (Am. Cmplt., Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Claims) Chao has moved to dismiss the Amended Complaint on grounds of absolute immunity. For the reasons stated below, Chao's motion to dismiss will be granted.

### BACKGROUND

For purposes of deciding Defendant Chao's motion to dismiss, the Court has assumed that the following facts presented in the Amended Complaint are true.

### I. *MOYE'S ARREST*

On or about March 12, 2002, at approximately 8:00 p.m., NYPD officers Paul Jeselson and Tawaina O'Neal were stationed on the rooftop of an apartment building on the south side of West 118th Street near the corner of Morningside Avenue conducting nighttime narcotics surveillance. (Am.Cmplt.¶¶ 19, 22) Plaintiff's car was located on the north side of West 118th Street, near Manhattan Avenue. (*Id.* ¶ 21) Officer Jeselson claimed that he observed Plaintiff "extend his hand from the driver's side window and hand a small glassine" to another individual—later arrested—who, in turn, handed it to an unapprehended customer. (*Id.* ¶ 20) The Defendant officers moved in and arrested Moye in the vicinity of 352 West 118th Street. (Am.Cmplt.¶¶ 12, 25)

At the time of the arrest, and later at the 28th Precinct, the officers searched Moye and his car and found United States currency, both in Moye's possession and inside the vehicle. (*Id.* ¶ 27) The Defendant officers unnecessarily grabbed Moye, pushed him, and placed excessively tight handcuffs on him (*id.* ¶ 30), causing him to suffer bruises to and numbness in his wrists. (*Id.* ¶ 32)

Moye was indicted on March 22, 2002, for Criminal Possession of a Controlled Substance in the Third Degree. (Am. Cmplt. ¶ 35; Schwartz Decl., Ex. A) Plaintiff alleges that the police officer defendants "conspired [to give] and gave false testimony and intentionally placed false evidence before the grand jury." [1] (Am.Cmplt.¶ 35)

[1]      The Amended Complaint does not disclose what false testimony or other false evidence was laid before the grand jury. Moreover, there is no suggestion that Chao was involved in presenting false testimony or false evidence to the grand jury.

### II. *MOYE'S FIRST TRIAL*

Moye's first trial began on January 14, 2003. (Schwartz Decl., Ex. B) A.D.A. Chao introduced photographs at trial which he claimed showed the position of Plaintiff s car as it was parked on West 118th Street. (Am.Cmplt.¶ 38) Chao, Officer Jeselson, and Officer Papa were present when a District Attorney's office photographer took these photos in June 2002 from the March 12, 2002 observation point. (*Id.* ¶¶ 41–42, 44) Although the photographs were intended to convey the vantage point of the officers on the night of the arrest, they did not replicate the "nighttime conditions." (*Id.* ¶ 45) According to Moye, these photographs nonetheless showed that the officers could not have seen Plaintiff extend his hand from the driver's side window and pass a small glassine to another individual, because the driver's side could not be seen from the vantage point of the rooftop observation post, even with binoculars. (*Id.* ¶¶ 46, 48) At trial, Officer Jeselson admitted

that "he was not able to see the driver's side of the vehicles in the photographs." (*Id.* ¶ 47) Jeselson nonetheless claimed that he had been able to see Moye's hand "during the nighttime observation." (*Id.* ¶ 39) The first trial ended in a mistrial, with the jury unable to reach a verdict. (*Id.* ¶ 49)

### III. *MOYE'S SECOND TRIAL*
**\*2** In February 2003, A.D.A. Chao, Officers Brennan and Jeselson, and D.A's Office photographer Nancy Badger returned to West 118th Street to take more photographs. (*Id.* ¶ 53) They repositioned the car on an angle in order to make it appear that the officers would have been able to see Moye's hand outside the driver's side window on the night of his arrest. (*Id.* ¶¶ 55–60) With the car positioned in this fashion, Jeselson and Chao instructed Badger to take photographs of Officer Brennan's hand outside the driver's side window in an effort to simulate what the officers would have seen that night. (*Id.* ¶¶ 60–61) Jeselson and Chao then had Brennan move the car back to a curbside position "where additional photographs [were] taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶ 63)

At Moye's second trial, Chao introduced these new photographs and elicited testimony from Jeselson in which he used the photographs to support his claim that he was able to see Moye's hand from the rooftop observation post. (*Id.* ¶¶ 66, 74) However, Badger testified that, in taking the new photographs, "the defendants moved the vehicle to an angle where the hand could be visible." Defendants then returned the vehicle to its curbside position and took additional photographs that "falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶¶ 81–84)

In summation, Moye's lawyer argued that Jeselson had lied about his observations from the roof and the positioning of the car in the photographs introduced by the prosecution.

(*Id.* ¶ 85) In response, A.D.A. Chao argued that Officer Jeselson had no opportunity to frame the defendant, because Chao had been present at the observation post:

"[Defense counsel] spoke about people on that roof. It's in evidence. Officer Jeselson was on that roof, the photographer Laura Badger was on the roof, and I was on that roof. Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

"And if he knew he was going to get away with it when I say that's the opportunity, you know [defense counsel] talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office. Well, if Officer Jeselson thought he was going to get away with it—

"[DEFENSE counsel]: Mr. Chao is vouching for his witness.

"THE COURT: Overruled.

"[ADA] CHAO: If Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me because I'm prosecuting this case, not Officer Jeselson.

"[DEFENSE counsel]: That's objectionable vouching for his witness.

"THE COURT: Overruled.

"[DEFENSE counsel]: Your Honor, he is making himself an unsworn witness for the credibility of his police officer.

**\*3** "THE COURT: Overruled.

"[ADA] CHAO: Ladies and gentlemen, Mr. Morgenthau should fire me if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on that roof is me. Well, that lies with me.

"So what's the explanation? If there's no motive, no opportunity for why Ms. Badger remembers it differently. Well, there's evidence that you heard the officer was on the roof. Evidence that you heard I was on the roof also. I have no other answer other than the fact that she is mistaken....

"[DEFENSE counsel]: He is vouching for his witness using the pronoun I.

"THE COURT: Members of the jury, you can accept his argument as to what happened on the roof. It's his argument based upon the evidence as he recalls it."

*People v. Moye,* 52 A.D.3d 1, 5 (1st Dep't 2008); *see also* (Am. Cmplt. ¶¶ 87–92.

Moye was convicted at his second trial and sentenced to four-and-a-half to nine years' imprisonment. (Am.Cmplt.¶¶ 13–14)

### IV. *THE CHARGES AGAINST MOYE ARE DISMISSED*

On appeal, the First Department vacated the conviction in a 3–2 decision. *People v. Moye,* 52 A.D.3d 1. The First Department found that "the prosecutor improperly vouched for his witness and interjected his personal integrity and the veracity of the District Attorney's office into his summation to support the credibility of Police Office Jeselson." *Id. at 6.* The New York Court of Appeals agreed that Chao had engaged in impermissible vouching for his witness, affirmed the reversal of the conviction, and remanded the case to Supreme Court. *People v. Moye,* 12 N.Y.3d 743, 744 (2009). After remand, the New York County District Attorney's Office dismissed the case on October 21, 2009. (Am.Cmplt.¶¶ 16, 37)

### DISCUSSION

### I. *IMMUNITY*

Chao argues that the claims against him must be dismissed because his actions are protected by absolute immunity. [2]

[2]    Because Moye sues Defendant Chao in his individual capacity (Am .Cmplt.¶ 9), his claims are not barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("To the extent that ... a [Section 1983] claim is asserted against a [state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.").

Section 1983 "purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher,* 522 U .S. 118, 123 (1997). In order to state a claim under Section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Newton v. City of New York,* 566 F.Supp.2d 256, 269–70 (S.D.N.Y.2008) (citing *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004)).

"Although section 1983 imposes liability upon every person who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.' " *Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).

**\*4**    As the Second Circuit has explained:

Such immunities are of two types: absolute and qualified. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 430–31. *See also Hill v. City of New York,* 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).

By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. *Buckley v. Fitzsimmons,* 509 U.S. at 273. ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); *accord Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000).

*Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502–03 (2d Cir.2004).

Absolute immunity extends only so far as necessary to protect the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995). Nonetheless,

[t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111

S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 995).

*Pinaud,* 52 F.3d at 1147. The Court addresses the parameters of absolute prosecutorial immunity below.

**A. *Legal Standard for Absolute Prosecutorial Immunity***
A prosecutor who, as here, is sued in his or her individual capacity, may assert absolute or qualified immunity as a defense. Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette v. City of New York,* No. 05 CV 5275(SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Hill,* 45 F.3d at 663) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint")). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery. [3] *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *United States v. Colbert,* No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept. 11, 1991). This approach is appropriate given that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler,* 424 U.S. at 419 n. 13. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley,* 509 U.S. at 270 (1993) (citing *Burns,* 500 U.S. at 486).

[3]     District courts likewise evaluate the applicability
        of absolute immunity before assessing whether a
        plaintiff has sufficiently alleged a constitutional
        violation. *Pinaud,* 52 F.3d at 1148 n. 4 (citing
        *Buckley,* 509 U.S. at 261).

**\*5** Prosecutorial immunity to Section 1983 claims is grounded in the immunity to tort liability that prosecutors enjoy under the common law. *Flagler v. Trainor,* 663 F.3d 543, 546 (2d Cir.2011) That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler,* 424 U.S. at 423). Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina,* 522 U.S. at 125. Prosecutors are therefore "absolutely immune from suit only when acting as advocates and when

their conduct involves the exercise of discretion." *Flagler,* 663 F.3d at 546 (citing *Kalina,* 522 U.S. at 127).

The Supreme Court addressed the question of absolute immunity for prosecutors in *Imbler,* where it held that prosecutors are entitled to absolute immunity for damage suits under Section 1983 for all acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and ... presenting the State's case [at trial]." *Imbler,* 424 U.S. at 430.

Later, in *Buckley,* 509 U.S. at 273, the Supreme Court considered whether the prosecutor defendants were entitled to absolute immunity for "investigative" work they performed well before seeking an indictment, involving an effort to connect the plaintiff to a bootprint left at a murder scene. Although the Court rejected the prosecutors' claim for absolute immunity, the Court cautioned that it had

> not retreated ... from the principle that acts undertaken by a prosecutor preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley,* 509 U.S. at 273 (internal citations and quotations omitted).

Whether a prosecutor has absolute immunity for a particular act thus "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Johnson v. City of New York,* No. 00 CIV 3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (citing *Kalina,* 522 U.S. at 126). Furthermore, this "application of immunity is not limited to the duties a

prosecutor performs in the courtroom." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (citing *Buckley,* 509 U.S. at 272).

**\*6** "[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." *Hill,* 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory,* 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....")

Because absolute immunity extends broadly to all acts committed by a prosecutor in his or her role as an advocate, it protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

> absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (*per curiam* ) (holding ... that prosecutor was immune from § 1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing] ... there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the

performance of their duties. *See Imbler,* 424 U.S. at 426–428.

*Dory,* 25 F.3d at 83. [4]

> [4] By contrast, discretionary prosecutorial actions that are not "intimately associated with the judicial phase of the criminal process" are entitled only to qualified immunity. *See Buckley,* 509 U.S. at 270–75; *Burns,* 500 U.S. at 491–95. A prosecutor is "absolutely immune from liability under section 1983 [only] for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.' " *Day,* 909 F.2d at 77 (quoting *Imbler,* 424 U.S. at 410). Thus, when a prosecutor acts in an investigative or administrative capacity, absolute immunity is not available. *Hill,* 45 F.3d at 661. For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78; authorizes or directs the use of wiretaps, *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984); or performs the functions normally performed by the police, such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273. The Supreme Court has also withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, *Burns,* 500 U.S. at 492–96, or acting as a complaining witness. *Kalina,* 522 U.S. 118, 129–31; *see also Ying Jing Gan,* 996 F.2d at 533 (finding that prosecutor was not entitled to absolute immunity where he allegedly exposed a witness to retaliation and failed to provide adequate protection for the witness).

Although courts have declined to establish a bright-line test based on the stage of a criminal proceeding, "absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue." *Tabor v. New York City,* No. 11 CV 0195 FB, 2012 WL 603561, at \*4 (E.D.N.Y.2012) (citing *Barbera v. Smith,* 836 F.2d at 99. In contrast, where formal proceedings have not begun and the prosecutor is acting in an investigative capacity—such as by providing the police with legal advice on investigative techniques—qualified immunity generally applies. *Id.* While the Supreme Court has noted that a prosecutor is not absolutely immune for every action taken after probable cause has been established, *see Buckley,* 509 U.S. at 274 n. 5, "the Court's treatment of the issue demonstrates that

the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Cousin v. Small,* 325 F.3d 627, 633 (5th Cir.2003); *accord Barbera,* 836 F.2d at 99 (noting "that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts"); *see also DiBlasio v. Novello,* 344 F.3d 292, 300–01 (2d Cir.2003) ( "In assessing whether absolute immunity should attach to a prosecutor ... we have focused on the timing of the conduct at issue....") Thus, in interpreting *Buckley,* the Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand, with only the former entitling a prosecutor to absolute immunity. *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998).

**\*7** In assessing a prosecutor's claim of absolute immunity, the court employs a "functional approach," *see, e.g., Burns,* 500 U.S. at 486, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988); *see also Van de Kamp v. Goldstein,* 555 U.S. 335, 335–336 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of ... 'functional' considerations"). The court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir.2004) (a court must examine the "nature of the function performed" in assessing whether absolute immunity will attach.); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

### B. *Analysis*

#### 1. *Malicious Prosecution, Abuse of Process*

To the extent that the Amended Complaint seeks to hold Chao liable for initiating the prosecution of Moye, absolute immunity is clearly applicable. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) ("[T]he prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."); *see also Hill,* 45 F.3d at 660–61 (holding that prosecutors and those working under their direction are absolutely immune for claims relating to the initiation of a prosecution and for conduct before a grand jury). Plaintiff s

federal and state law claims alleging malicious prosecution and abuse of process will therefore be dismissed. [5]

> [5]   Absolute immunity is a defense not only to Section 1983 claims but to related state law claims. *See Shmueli,* 424 F.3d at 238 (dismissing Section 1983 and related state law malicious prosecution claims); *Arum v. Miller,* 331 F.Supp.2d 99, 112 (E.D.N.Y.2004) (dismissing abuse of process and civil conspiracy claims on grounds of absolute prosecutorial immunity); *Imbler,* 424 U.S. at 424 (same principles require conferral of absolute immunity for damage claims against prosecutors under Section 1983 and state law).

#### 2. *Creation of Misleading Photographs, Conspiracy to Present False Evidence at Trial*

Moye alleges that Chao, in preparation for Moye's second trial, returned to West 118th Street and instructed Nancy Badger—the District Attorney's office photographer—to take photographs that inaccurately represented the position of Moye's car on the night of his arrest. Chao then presented these photographs at the second trial. (Am.Cmplt.¶¶ 38, 40, 50, 50–54, 66–67) Moye alleges that these photographs gave the false impression that the police in the observation post would have been able to see Moye's hand outside the driver's side window. (*Id.* ¶ 60) Moye further argues that absolute immunity does not extend to Chao's role in obtaining these allegedly misleading photographs, because obtaining such evidence is "not a traditional prosecutorial function" and was "done for the purpose of misleading the second jury." (Pltf. Opp. Br. at 10–11)

Prosecutors' absolute immunity applies "not just for presentation of testimony," however, but also to preparatory conduct "relating to their advocacy." *Dory,* 24 F.3d at 83. The Supreme Court and the Second Circuit have emphasized that ' "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera,* 836 F.2d at 100 (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett,* 798 F.2d at 571 ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....").

**\*8** Chao obtained the photographs at issue after Moye's first trial and in preparation for Moye's second trial. Accordingly, his involvement in obtaining these photographs took place long after formal criminal proceedings had been commenced. *See Deskovic v. City of Peekskill,* Nos. 07–CV–8150 (KMK), 07–CV–9488 (KMK), 2009 WL 2475001, at \*10 (S.D.N.Y. Aug. 13, 2009) ("[i]n assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant") (citing *DiBlasio,* 344 F.3d at 300–01).

Furthermore, in directing that these new photographs be taken, Chao was performing in his role as a prosecutor preparing for trial: he sought to obtain these visual depictions of the crime scene in order to strengthen his case. (Am. Cmplt. ¶ 64 (purpose of second set of photographs was "to show that P.O. Jeselson could see a hand coming out of the car window on the date of plaintiff s arrest")). Although Chao was working with the police, he was acting within his role "as [an] advocate for the State." *Burns,* 500 U.S at 491. Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial. *See, e.g., Deskovic,* 2009 WL 2475001, at \*5, \*11, \*13 (plaintiff contended that A.D.A. had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial; granting A.D.A.'s motion to dismiss Section 1983 claims on absolute immunity grounds, because the A.D.A.'s alleged misconduct took place after indictment during the "judicial phase of the criminal process"); *Bertuglia v. City of New York,* No. 11 Civ. 2141(JGK), 2012 WL 906958, at \*21 (S.D.N.Y. Mar. 19, 2012) (granting motion to dismiss state law claims against A.D.A. defendant based on post-indictment evidence-gathering activities; absolute immunity applicable because "the Complaint does not allege facts that create a plausible inference that [the prosecutor] was not acting as an advocate seeking to strengthen her case against an indicted defendant"); *Zahrey v. City of New York,* No. 98–4546, 2009 WL 54495, at \*30–\*31 (S.D.N.Y. Jan. 7, 2009) (granting absolute immunity to A.D.A. alleged to have engaged in post-indictment effort to fabricate evidence); *KRL v. Moore,* 384 F.3d 1105 (9th Cir.2004) (granting A.D.A. absolute immunity for alleged misconduct related to his role in obtaining a post-indictment search warrant seeking evidence to corroborate pending charges); *Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) (granting absolute immunity to A.D.A. accused of fabricating evidence post-indictment; "at the time of [A.D.A.] Jordan's ...

conversations with Rowell, in which Jordan allegedly told Rowell to implicate Cousin falsely in the murder and coached him on how to testify, Jordan was acting as an advocate rather than as an investigator. The interview was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause. Jordan therefore is entitled to absolute immunity with respect to this claim."); *see also Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) (affirming dismissal on absolute immunity grounds of Section 1983 claim brought against Assistant State's Attorney based on alleged conspiracy to present false evidence at trial); *Dory,* 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for ... allegedly conspiring to present false evidence at a criminal trial").

**\*9** Because Chao is alleged to have obtained the misleading photographs post-indictment, in preparation for Moye's second trial, and in an effort to strengthen his case as the State's advocate, he is entitled to absolute immunity for this alleged misconduct.

### 3. *Misconduct at Trial*

Moye alleges that Chao elicited false testimony from Officer Jeselson at trial, that he buttressed Jeselson's false testimony through introduction of the misleading photographs, and that he then vouched for the truth of Jeselson's testimony in his summation.

A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity. *Jones v. King,* No. 10 Civ. 0897(PKC), 2011 WL 4484360, at \*4 (S.D.N.Y. Sept. 28, 2011) ("The claim that [the prosecutor] 'conspir[ed] to present false evidence at a criminal trial' is barred.... The prosecutor enjoys absolute immunity 'despite allegations of his "knowing use of perjured testimony...." ' ") (citations omitted); *Bertuglia,* 2012 WL 906958, at \*23 (prosecutors are entitled to absolute immunity for allegations that they "coerced and harassed various witnesses into giving false testimony"); *Urrego v. United States,* No. 00 CV 1203(CBA), 2005 WL 1263291, at \*2 (E.D.N.Y.2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."); *Johnson v. Scott,* No. CV–91–1467(CPS), 1993 WL 36131, at \*2 (E.D.N.Y. Feb. 5, 1993) (A.D.A. entitled to absolute immunity related to witness perjury, because this "concern[ed] ... the presentation of the State's case against the plaintiff"); *see Imbler,* 424 U.S. at

430–31 (granting prosecutors absolute immunity for their conduct "in presenting the State's case," including permitting a fingerprint expert to give false testimony, suppressing important evidence, and introducing a misleading artist's sketch into evidence.).

The analysis does not change because Plaintiff alleges a conspiracy to commit these acts. *Shmueli,* 424 F.3d at 237–38 ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy") (citing *Dory,* 25 F.3d at 83); *Bernard,* 356 F.3d at 503; *Hill,* 45 F.3d at 659 n. 2 (when the underlying activity at issue is covered by absolute immunity, the "plaintiff derives no benefit from alleging a conspiracy").

Plaintiff also argues that Chao acted outside his prosecutorial role when he vouched for Jeselson's testimony during summation. Because a prosecutor's summation is part of presenting the State's case, courts agree that a prosecutor's conduct during summation is protected by absolute immunity. *See Robinson v. Rome,* No. 11–CV–1411(NGG)(LB), 2011 WL 1541044, at *3 (E.D.N.Y.2011) (finding A.D.A.s immune from suit for claims related to, *inter alia,* an improper summation); *Johnson,* 1993 WL 36131, at *2 (granting absolute immunity to prosecutor where plaintiff alleged that A.D.A. "express[ed] to the jury her opinion as to the truth of the testimony of her witnesses during her summation").

**\*10** In sum, to the extent that Moye's claims against Chao are based on his conduct at trial, those claims are covered by absolute immunity.

\* \* \* \*

The Court concludes that Chao has absolute immunity for all of Moye's claims, whether based on federal or state law, and whether founded on theories of malicious prosecution, abuse of process, denial of a fair trial, fabricated evidence, conspiracy, or intentional or negligent infliction of emotional distress.

### *CONCLUSION*

Chao's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2569085

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2000 WL 1335865
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Martin JOHNSON, Plaintiff,

v.

THE CITY OF NEW YORK, Assistant District
Attorney Robert Henoch, Captain of Corrections Martin,
Corrections Officer Schmidt, Corrections Officer Brown
and Unidentified Correction Officers, Defendants.

No. 00CIV.3626(SHS).
|
Sept. 15, 2000.

OPINION AND ORDER

STEIN, D.J.

**\*1** Martin Johnson has brought this action pursuant to 42 U.S.C. § 1983 seeking monetary damages on the grounds that the defendants—the City of New York, an Assistant District Attorney, and certain Corrections Officers—violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution by failing to protect him from an attack by fellow inmates against whom he had arranged to testify. Johnson also asserts two tort claims. The Assistant District Attorney moves to dismiss the complaint as it pertains to him pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. For the following reasons, the motion is granted and the complaint is dismissed as to ADA Henoch.

BACKGROUND

The facts are taken from plaintiff's complaint and are assumed to be true for purpose of this motion. In May of 1998 Johnson was arrested for allegedly selling crack cocaine. Complaint at 4. Shortly after his arrest, he entered into a cooperation agreement with ADA Henoch to testify against several of his co-defendants. [1] *Id.* ADA Henoch allegedly "assured" plaintiff at that time that he "would protect him[ ]" from possible retaliation by his co-defendants. *Id.* Johnson claims that he was being held in Beacon, a housing area on Rikers Island, which was in "the same general area" as where the

people against whom he was to testify were held and that he alerted ADA Henoch of this fact. *Id.* ADA Henoch "explicitly assured [him] that he would be safe" and that "he would be placed in protective custody." *Id.* at 4–5. Plaintiff also alerted defendant Corrections Officers Martin, Schmidt, Brown and "Unidentified Correction Officers" to his danger. *Id.* at 5.

[1]   The complaint states that plaintiff entered into the cooperation agreement with ADA Henoch on June 18, 1999. Complaint at 4. Plaintiff's opposition, however, states the cooperation agreement was entered into in "June of 1998". Opposition at 2. In addition, plaintiff has recently sought—successfully—to amend the complaint to allege that the agreement was made in June of 1998. Accordingly, this Court will assume that plaintiff entered into the cooperation agreement with defendant in June, 1998.

On February 24, 1999, plaintiff was attacked by fellow inmates "who called him a snitch as they beat and kicked him." *Id.* As a result of the beating, Johnson suffered a fractured ankle, injuries to his head, neck and legs, and damage to his retina that required surgery. *Id.* ADA Henoch, after learning of the attack on plaintiff, "acknowledged [his] prior request for protection." *Id.*

As noted above, Johnson has filed this action against the City of New York, Correction Officers Martin, Schmidt, Brown, and ADA Henoch and the ADA has moved to dismiss the complaint on the grounds that it fails to state a constitutional claim for which relief may be granted and that he is entitled to either absolute or qualified prosecutorial immunity.

DISCUSSION

When reviewing a motion to dismiss, a court must accept as true the factual allegations of the complaint and must view the pleadings in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. *See Jamison v. Dee,* 2000 WL 502871 (S.D.N.Y. April 27, 2000) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)). Dismissal of the complaint is only proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

I. *Absolute Immunity*

**\*2** It is well-established that prosecutors are absolutely immune from suits for damages arising from actions which are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Such functions include the decision to bring charges against a defendant, *see Gan,* 996 F.2d at 530, presenting evidence to a grand jury, *see Barret v. United States,* 789 F.2d 565, 571–72 (2d Cir.1986), and the evaluation of evidence prior to trial. *See Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity is not available, however, when a prosecutor "undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

*Barbera v. Smith,* 836 F.2d 96, 100, is closely analogous to this action. In *Barbera,* the Second Circuit held that a prosecutor was not entitled to absolute immunity where he twice refused to provide a cooperating witness with police protection. *Id.* at 98. The witness had agreed to testify in return for a more lenient sentence and was murdered by a contract killer hired by the target of the prosecutor's investigation. *Id.* The Court found that "the government was still seeking evidence, including testimony from [the victim], that would enable it to prosecute ..." and that "this task [providing protection] was [not] so intimately associated with the judicial phase of the criminal process ..." as to entitle the prosecutor to absolute immunity. *Id.*

Here, as in *Barbera,* defendant's activities were not "so intimately associated with the judicial phase of the criminal process" as to entitle him to absolute immunity from suit. *See Gan,* 996 F.2d at 531 ("the claim that [the prosecutor] failed to protect [plaintiff] asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if [defendant] is to be accorded immunity ... it can only be qualified immunity ."). Therefore absolute immunity is not available to the district attorney in this action.

## II. *Qualified Immunity*

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 72 L.Ed .2d 396 (1982)). Dismissal for failure to state a claim is thus appropriate where the complaint itself presents the qualified immunity defense. *See, e.g., Green,* 722 F.2d at 1019. The United States Supreme Court has also held that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *See also Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987) (citing *Procunier v. Navarette,* 434 U.S. 555, 565 (1978) (prison officials entitled to dismissal of claims of violating prisoner's First and Fourteenth Amendment rights by interfering with mail where such rights had not been clearly established)). Even when viewed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, *Mills,* 12 F.3d at 1174, Johnson's allegations regarding the District Attorney do not state a violation of a clearly established constitutional right. Thus, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate. *See, e.g., Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

**\*3** Qualified immunity shields government actors performing discretionary functions from " 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2nd Cir.1995) (quoting *Harlow,* 457 U.S. at 818.) To determine whether a right was clearly established at the time defendant acted, the Court must consider: "(1) whether the right in question was defined 'with reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gan,* 996 F.2d at 532 (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1992)).

The District Attorney claims that he is entitled to qualified immunity because, even if he had a constitutional duty to protect Johnson, it was not a clearly established duty. The Due Process Clause itself does not require the State to protect "the life, liberty, [or] property of its citizens against invasion by private actors." *Deshaney v. Winnebago County Dep't of Soc. Serves,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d

2000 WL 1335865

249 (1989). Therefore, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The only judicially recognized exceptions to this rule are custodial relationships where "the State takes a person into its custody and holds him there against his will," *Id.* at 199–200, 109 S.Ct. at 1005 (the "special relationship" exception), or when the government affirmatively creates or increases the danger an individual is placed in. *See Dwares v. City of N.Y.,* 985 F.2d 94, 98–99 (2d Cir.1993) (the "state-created danger" exception).

Special relationships that have given rise to a governmental duty to protect against third-person attacks include "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child." *Gan,* 996 F.2d at 532 (citing cases).

The Second Circuit has also recognized the state-created danger exception to *DeShaney's* general rule. *See Dwares,* 985 F.2d at 99 (police officers agreed in advance with members of a group to allow the group to assault the plaintiff, did not interfere during the beating and did not arrest those who assaulted the plaintiff); *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (arresting officers returned gun to robbery victim and drove him to the scene of suspect's arrest, where the victim shot the suspect); *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reversing dismissal on qualified immunity grounds against police chief who instructed subordinates to ignore victim's request for protection from her husband, who was the chief's friend).

**\*4** Johnson contends that the District Attorney's proffer of the cooperation agreement and assurance that he would protect plaintiff conferred upon the District Attorney a constitutional duty to protect Johnson. [2] Plaintiff claims that the prosecutor's duty to protect him was clearly established by *DeShaney* and by *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison officials may be held liable under Eighth Amendment for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it). However, neither *DeShaney* nor *Farmer* clearly establish the law regarding plaintiff's allegations. While the very action in question need not have been previously held unlawful for a constitutional right to be clearly established, *Duncan v. Kean,* 1995 WL 649931, \*3 (S.D.N.Y. Nov. 6, 1995)

(citing *Aveni v. Mottola,* 35 F.3d 680, 686 (2d Cir.1994)), it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

[2]    Johnson does not specify whether he is claiming defendant Henoch owed a duty to protect him based on the special relationship or state-created danger exception to the *DeShaney* rule. For the purpose of this motion, both arguments will be addressed.

The Second Circuit has twice considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party. *See Barbera,* 836 F.2d at 100–01; *Gan,* 996 F.2d at 533–34. In *Gan,* a panel of the Second Circuit wrote that

> "[p]laintiffs have not called to our attention any case before or since [*Barbera* ] ... in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose a corresponding duty on a prosecutor."

*Id.* at 533–34.

Here, as in *Gan,* plaintiff points to no case, and the Court is aware of none, where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party. Nor is the Court aware of any decision which has held that the mere proffer of a cooperation agreement by a prosecutor so increases the danger to an inmate that it creates a constitutional duty for the prosecutor to protect the inmate from potential attacks by third persons. A *prison official's* willful failure to protect an inmate from another inmate's violent actions violates the Constitution if the officer was "deliberate[ly] indifferen[t] to the consequences of his conduct for those under his control

Johnson v. City of New York, Not Reported in F.Supp.2d (2000)

2000 WL 1335865

and dependent upon him," *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). However, no corresponding duty has been found to exist between an inmate and prosecutor.

Based on the limited caselaw in existence at the time of the alleged attack, and particularly because of the absence of any caselaw which holds that any state actor other than a prison official owes a duty to protect an inmate from another inmate's violent actions, it cannot be said that it was clearly established that defendant ADA Henoch had created or assumed a special relationship with Johnson imbuing him with a constitutional duty to protect him. Therefore, this Court "need not decide whether [it] would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection ... would have violated [plaintiff's] rights under the Constitution." *Gan,* 996 F.2d at 534. Defendant Henoch is therefore entitled to qualified immunity.

### III. *The Pendent State Claims*

**\*5** The ADA's motion to dismiss plaintiff's pendent state law claims is likewise granted. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the state law claims against ADA Henoch are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 98 L.Ed.2d 720 (1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986).

### IV. *CONCLUSION*

For the reasons set forth above, the prosecutor's motion to dismiss is granted and the complaint is dismissed as against the assistant district attorney.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1335865

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.